[Cite as *State v. Terry*, 2016-Ohio-3484.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 26722 |
| | : | |
| v. | : | Trial Court Case No. 14-CRB-4993 |
| | : | |
| AMANDA TERRY | : | (Criminal Appeal from |
| | : | Dayton Municipal Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

## O P I N I O N

Rendered on the 17th day of June, 2016.

. . . . . . . . . .

BARBARA J. DOSECK, Atty. Reg. No. 0079159, AND STEPHANIE L. COOK, Atty. Reg. No. 0067101, by TROY B. DANIELS, Atty. Reg. No. 0084957, City Prosecutor's Office, 335 West Third Street, Room 372, Dayton, Ohio 45402
      Attorneys for Plaintiff-Appellee

HILARY LERMAN, Atty. Reg. No. 0029975, 249 Wyoming Street, Dayton, Ohio 45409
      Attorney for Defendant-Appellant

. . . . . . . . . . . .

HALL, J.

{¶ 1} Amanda Terry appeals from her convictions for obstructing official business

and resisting arrest. We affirm.

## I. Background

{¶ 2} Just after midnight on the morning of July 5, 2014, Huber Heights police officer Robert Bluma was on his way back to Huber Heights from the Dayton jail. While still in the City of Dayton, Bluma saw a red pickup truck, travelling fast, veer over the double yellow center lines into oncoming traffic and then cut back into its lane. The truck swerved again and the driver briefly slammed on the brakes, leaving behind smoke and skid marks. The truck then spun its tires and pulled into the parking lot of a Dayton restaurant.

{¶ 3} Officer Bluma followed, thinking that the driver could be drunk or high or having a medical emergency. He was concerned that the driver could be a danger to himself and others. His cruiser's windows were down, and when he pulled in, he could hear a man and woman screaming in the truck. Bluma radioed dispatch to send a second officer to assist him, and Huber Heights police officer Joshua Fosnight was sent. Bluma also asked dispatch to contact the Dayton police and ask them to send officers because he was in their jurisdiction.

{¶ 4} Officer Bluma, on foot, approached the truck's driver's side. He continued to hear loud yelling and screaming from the occupants, leading him to think that it could be a domestic-violence situation. Bluma began talking to the driver, Patrick O'Connell. Officer Fosnight soon arrived and began talking to the passenger, Amanda Terry. While the officers were speaking with them, Terry and O'Connell continued to argue, making it difficult to determine what the problem was. While watching the two argue, Bluma noticed that Terry had a 24 oz. can of Miller Light beer open between her legs. She appeared to

be "extremely intoxicated." (Trial Tr. 13). Officer Bluma's suspicion was confirmed when O'Connell told him that he (O'Connell) and Terry had been drinking at a friend's house and that she was drunk. Because O'Connell and Terry continued to argue with each other, the officers could not figure out what was going on, so Officer Bluma asked O'Connell to step out of the truck to talk, which O'Connell did. Officer Fosnight asked Terry to step out too. She initially refused, but after being asked multiple times, she finally agreed.

{¶ 5} Officer Bluma testified that he wanted to talk to O'Connell for two reasons. One, he wanted to determine whether O'Connell was drunk, and two, given the conduct that he had observed, Bluma wanted to determine whether any domestic violence had occurred between the two. While he talked to O'Connell at the rear of the truck, Terry screamed at them from the driver's side door. She cursed Officer Bluma and told O'Connell to stop talking to him. Despite Officer Fosnight telling her to stop yelling, Terry continued. She was so loud that Bluma could not hear what O'Connell was saying. Finally, O'Connell became frustrated and stopped talking to Officer Bluma. Turning his attention to Terry, Bluma told her that her "behavior [wa]s unacceptable and she need[ed] to calm down." (*Id.* at 24). Bluma had her stand farther away, next to his patrol car. After this, Terry calmed down. Officer Bluma was able to get the basic outline from O'Connell of what had happened. O'Connell said it was just a heated argument, no violence or threats of violence. Suddenly, Bluma heard Terry start yelling and cursing again and saw her walking towards them. He repeatedly told her to stay by his cruiser, and Terry finally complied. O'Connell then finished telling Officer Bluma what had happened. O'Connell said that during the argument Terry reached over and grabbed the steering wheel, making the truck veer into the other lane. She tried to grab the wheel again, and he slammed on

his brakes.

{¶ 6} When Officer Bluma finished talking to O'Connell, Dayton police still had not arrived. So Bluma sat in his cruiser, with the door open, and began writing a report of the encounter. Terry, who had been standing in front of the cruiser with her back facing it, turned around and told Officer Bluma that "she was going to get in her truck and leave." (Trial Tr. 28). O'Connell had taken the keys out of the ignition when he stepped out of the truck. But the truck belonged to Terry, and Officer Bluma was unsure whether Terry had a set of keys too. Believing that Terry was extremely intoxicated, Bluma told her that "she was not getting into her truck" and was "not leaving." (*Id.*). Terry replied that he could not do anything about it and began walking to the truck. Exiting his cruiser, Officer Bluma repeatedly ordered Terry to stop. She didn't. So Bluma grabbed her wrist and told her that she was under arrest for obstructing official business. Terry struggled to break free, so Officer Fosnight grabbed her other wrist. Terry tried to kick the officers as they forced her away from the truck and back toward Officer Bluma's cruiser. Bluma had to use an "arm bar" control technique to get handcuffs on Terry. She continued kicking the officers and pushed away from the cruiser when they tried to seat her inside. Officer Bluma had to force Terry's head down and push her into the backseat while Officer Fosnight pulled her in from the other side. Once she was locked inside the cruiser, Terry screamed at the officers, kicked the cruiser's windows and ceiling, and banged her head against the cages. She also managed to get one of her hands out of the handcuff.

{¶ 7} After they got Terry into his cruiser, Officer Bluma turned on the cruiser's video camera. While the camera faces forward, toward the front of the cruiser, it records sound from inside the vehicle. The audio and video recorded after Terry was put in was

played during the trial and admitted into evidence. Officer Bluma testified that the screaming female voice was Terry and that she was making the banging noises and shaking the cruiser. Bluma said that her conduct in the video was "the exact tone and behavior that she was displaying [earlier] at the time when I asked her to calm down." (*Id.* at 44).

{¶ 8} Dayton police officers arrived 10-15 minutes after Terry was put in the cruiser. When the Dayton officers finished their investigation, they moved Terry from Officer Bluma's cruiser to a Dayton police cruiser. Bluma testified that Terry did not go gracefully and resisted being handcuffed. (She had gotten one hand out of the handcuffs that Officer Bluma put on.) It took the efforts of two Dayton police officers to get the handcuffs on. And while being moved, Terry planted her feet in an attempt to prevent the officers from moving her. It took both officers to move her to their cruiser. Once inside, Terry began yelling and screaming at the Dayton police officers. The audio and video from the Dayton police cruiser that Terry was put in was also played at trial and admitted into evidence.

{¶ 9} Terry was charged with two second-degree misdemeanors—obstructing official business in violation of R.C. 2921.31(A) and resisting arrest in violation of R.C. 2921.33(A). Terry filed a motion to suppress, and a suppression hearing was held after which the trial court overruled the motion. A bench trial was held at which Officer Bluma, Officer Fosnight, and the two Dayton police officers testified. When the state rested, Terry orally moved for acquittal under Crim.R. 29 on both charges. The court overruled the motion. Terry did not herself testify or offer any evidence. The trial court found Terry guilty of both charges and sentenced her on both counts to 90 days in jail, giving her credit for

1 day served and suspending the remaining 89 days; two years of community control, including alcohol treatment; and court costs, which the court also suspended.

{¶ 10} Terry appealed.

## II. Analysis

{¶ 11} Terry assigns three errors to the trial court. The first assignment of error challenges the ruling on the motion to suppress. The second challenges the sufficiency of the evidence supporting her convictions. And the third assignment of error challenges Officer Bluma's testimony describing her conduct as "unacceptable behavior" and challenges the admission of his police-cruiser video.

### A. *There is no remedy for a violation of R.C. 2935.03.*

{¶ 12} The first assignment of error alleges that Terry's arrest violated R.C. 2935.03, which gives police warrantless arrest authority. Terry argues that, as a Huber Heights police officer, Bluma did not have authority to arrest her because they were in the City of Dayton. She concludes that her arrest was invalid and that the charges should have been dismissed.

{¶ 13} Despite her claim that the charges should have been dismissed, we understand this assignment of error to be arguing that the motion to suppress, not the motion for acquittal, should have been granted because of an R.C. 2935.03 violation. Terry did not mention this statute in her oral motion for acquittal. Rather, it was at the suppression hearing that Terry made the statutory argument. Also, Terry's argument here quotes the suppression-hearing transcript.

{¶ 14} The standards used to review a motion-to-suppress ruling were recently restated by the Ohio Supreme Court:

"Appellate review of a motion to suppress presents a mixed question of law and fact." In ruling on a motion to suppress, "the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." On appeal, we "must accept the trial court's findings of fact if they are supported by competent, credible evidence." Accepting those facts as true, we must then "independently determine as a matter of law, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard."

*State v. Leak*, 145 Ohio St.3d 165, 2016-Ohio-154, 47 N.E.3d 821, ¶ 12, quoting *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8.

{¶ 15} R.C. 2935.03 limits the exercise of a police officer's warrantless arrest authority to "the limits of the political subdivision * * * in which the peace officer is appointed, employed, or elected." R.C. 2935.03(A)(1). (There are exceptions, but none applies here.) Because they were stopped in the City of Dayton, Terry argues, Officer Bluma (a Huber Heights police officer) did not have the authority to arrest her. Therefore, she concludes, her arrest was invalid.

{¶ 16} The state does not argue that the Huber Heights officer had authority to arrest Terry under R.C. 2935.03. Rather, the state says that we need not decide this issue because suppression is not a remedy for a violation of this statute. The state is correct that suppression is not a remedy. The Ohio Supreme Court has held that a violation of R.C. 2935.03 does not implicate constitutional protections and does not merit use of the

exclusionary rule. *City of Kettering v. Hollen*, 64 Ohio St.2d 232, 416 N.E.2d 598 (1980); *State v. Weideman*, 94 Ohio St.3d 501, 506, 764 N.E.2d 997 (2002) (holding that the seizure of a motorist in violation of R.C. 2935.03 is not per se unreasonable under the Fourth Amendment). We have said that "a stop or arrest in violation of the territorial limits imposed by statute [R.C. 2935.03] upon a police officer's arrest powers, is not a constitutional violation, and will not, therefore, support the extraordinary remedy of exclusion of evidence obtained as a result of an unlawful stop or arrest." *State v. Pierce*, 2d Dist. Montgomery No. 19926, 2003-Ohio-7244, ¶ 9. In fact, there is no remedy for a violation of this statute. *State v. Jones*, 121 Ohio St.3d 103, 2009-Ohio-316, 902 N.E.2d 464, ¶ 21 (saying that neither the Ohio General Assembly nor the Fourth Amendment provides a remedy for a violation).

{¶ 17} Even if there were a remedy, there is no suppressible evidence here. As the trial court found, no evidence was obtained as a result of Terry's arrest: "I don't believe there are any suppressible statements, even as argued by the defense. I don't believe there are any suppressible statements. I don't believe there is any physical evidence that was obtained." (Suppression Tr. 50). The only material evidence, said the court, is "the observations of the officers." (*Id.* at 47). Terry's arrest was predicated primarily on her pre-arrest conduct, according to Officer Bluma, and no other evidence was obtained after her arrest. The evidence that supports the state's case comes from sources independent of Terry's post-arrest statements, i.e., the officer's observations. So the arrest led to no evidence subject to suppression.

{¶ 18} The first assignment of error is overruled.

B. *The evidence supporting the verdicts is sufficient.*

{¶ 19} The second assignment of error alleges that "[t]here was no valid ground to arrest Defendant-Appellant for obstructing official business, R.C. 2921.31, and without this charge there can be no validity to the charge of resisting arrest, R.C. 2921.33." Terry's first argument here focuses on the sufficiency of the evidence supporting the conviction for obstructing official business.

{¶ 20} In a sufficiency challenge, the question is "whether any reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 273, 574 N.E.2d 492 (1991). "In other words, an appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." (Citation omitted.) *Id.*

{¶ 21} Terry was convicted of obstructing official business in violation of R.C. 2921.31(A), which states: "No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties." Terry contends that there is insufficient evidence to prove that her purpose in walking away was to obstruct the police. She also contends that there is insufficient evidence to prove that she did any act that hampered or impeded the officers in their duties.

{¶ 22} Terry acted purposefully if she acted with the "specific intention to cause a certain result," R.C. 2901.22(A). The evidence must be sufficient to find that Terry

intended to obstruct the officers. "Because no one can know the mind of another, a defendant's intent is 'not discernible through objective proof.' *State v. Huffman* (1936), 131 Ohio St. 27, 1 N.E.2d 313, at syllabus ¶ 4. Rather, a defendant's intent in acting must be 'determined from the manner in which it [the act] is done, the means used, and all other facts and circumstances in evidence.' *State v. Wellman* (2007), 173 Ohio App.3d 494, 2007-Ohio-2953, 879 N.E.2d 215, at ¶ 15." *State v. McCoy*, 2d Dist. Montgomery No. 22479, 2008-Ohio-5648, ¶ 14. As to the required act, "the State must prove not only the commission of an overt act done with an intent to obstruct the officers, 'but it also must prove that [the defendant] succeeded in actually hampering or impeding them.' " *State v. Crawford*, 2d Dist. Montgomery No. 25506, 2013-Ohio-4398, ¶ 20, quoting *McCoy* at ¶ 16. But "this element does not require that [the defendant] cause the officers to fail in their duties, but only that, by acting, [the defendant] disrupted their performance of them." *Id.*

{¶ 23} Walking away from a police investigation and failing to heed a police officer's orders to stop can be sufficient to find a person guilty of obstructing official business. In *Dayton v. Turic*, 2d Dist. Montgomery No. 20149, 2005-Ohio-131, we held that a defendant's "belligerent conduct, her refusal to give her identification and her refusal to stop walking away from the officer when instructed to stop obstructed the officer's investigation of the altercation between [the defendant] and [others]." (Citations omitted.) *Turic* at ¶ 26. In that case, the defendant refused to show identification when a police officer requested it and attempted to exit the restaurant in which an altercation involving the defendant had occurred. Following the defendant, the officer told her several times to stop because the officer was still investigating. The defendant did not stop

walking away, so the officer grabbed her and tried to handcuff her. Under the facts of that case, we said, "[w]hen [the defendant] repeatedly refused to comply with [the officer]'s instructions, the officer was within her rights to arrest [the defendant] for obstructing official business." *Id.* The Tenth District concluded similarly in *State v. Kates*, 169 Ohio App.3d 766, 2006-Ohio-6779, 865 N.E.2d 66 (10th Dist.). There, during an investigation in which the defendant was identified having been involved in a traffic accident, the defendant walked away from a police officer, ignoring the officer's commands to stop. The defendant contended that the officer's command to stop was not an authorized act because the officer did not have probable cause to arrest the defendant for any offense. The defendant contended that the officer's authority was limited to an investigatory stop under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and that mere flight from a *Terry* stop does not constitute obstructing official business. The Tenth District disagreed. The officer repeatedly ordered the defendant to stop, said the court, and the defendant was aware that the officer was trying to detain him, yet he continued to walk away. The defendant's failure to heed the officer's orders to stop, concluded the court, was an affirmative act that hindered or impeded the officer in the performance of his official duties in investigating the accident. Finally, the Third District in *State v. Dice*, 3d Dist. Marion No. 9-04-41, 2005-Ohio-2505, upheld the defendant's conviction for obstructing official business based on his refusal to stop. In that case, officers called out to the defendant to stop, but he continued walking away, despite knowing that the officers were telling him to stop. When the defendant looked back, he saw the officers coming after him, so he began to run away because, the defendant said, he was scared. The appellate court said that clearly the officers were investigating a situation and wanted the

defendant. The court concluded that the defendant acted with the specific intent to prevent, obstruct, or delay the officers from their ongoing investigation.

{¶ 24} Here, Officer Bluma testified that while he was sitting in his cruiser entering notes and waiting for Dayton police to arrive, Terry told him that "she was going to get in her truck and leave." (Trial Tr. 28). Bluma replied, "no, you're not." (*Id.*). Terry then said "you can't do anything about it or something like that," turned around, and walked toward the truck. (*Id.*). Officer Bluma again told her that she "was not getting into her truck." (*Id.*). But Terry "continued to walk towards her truck." (*Id.*). So Bluma followed, grabbed her wrist, and told her that she was under arrest for obstructing official business. Terry resisted violently, and Bluma had to restrain her.

{¶ 25} Terry did not offer testimony of her intent so the evidence about her intent is limited to reasonable inferences that can be drawn from the state's evidence. We are required to draw all reasonable inferences in favor of the state. After doing so from the evidence in the record, we think that the trial court reasonably found that Terry's intent in walking to the truck and ignoring Officer Bluma's command to stop was to prevent, obstruct, or delay the ongoing investigation. We also believe that the court reasonably found that this act hampered or impeded that investigation. Although Appellant does not make the specific argument that a Huber Heights police officer was not conducting official business while traversing the City of Dayton, we have no reservation finding that he was. We reasonably expect an on-duty police officer who observes potentially dangerous criminal activity to stop and investigate regardless of jurisdictional boundary. The evidence supporting Terry's conviction for obstructing official business is sufficient.

{¶ 26} To prove that a defendant committed the offense of resisting arrest, the

state must prove that the arrest was "lawful," R.C. 2921.33(A). " 'An arrest is "lawful" if the surrounding circumstances would give a reasonable police officer cause to believe that an offense has been or is being committed.' " *State v. Blair*, 2d Dist. Montgomery No. 24784, 2012-Ohio-1847, ¶ 8, quoting *State v. Sansalone*, 71 Ohio App.3d 284, 285-286, 593 N.E.2d 390 (1st Dist.1991). The second part of Terry's second-assignment-of-error argument, as we understand it, is that the state failed to prove that her arrest was lawful because Officer Bluma had insufficient grounds to believe that she was obstructing official business. We reject this contention based on our above review of the evidence and our conclusion that the evidence supporting the obstructing conviction is sufficient.

{¶ 27} Curiously, Terry does not argue that her arrest was unlawful under R.C. 2935.03, governing the exercise of police officers' authority to make warrantless arrests. The statute gives an officer the authority to arrest a person found committing a misdemeanor within the officer's territorial jurisdiction. *See* R.C. 2935.03(A) and (B). The statute permits an officer to make an arrest outside the officer's territory in only a couple of situations. *See* R.C. 2935.03(E) and (D). Here, Officer Bluma's territorial jurisdiction was limited to Huber Heights. But it was in Dayton that Terry committed the obstructing offense for which Bluma arrested her, and none of the extra-territorial exceptions applies. So Bluma did not have the statutory authority to arrest Terry and, if resisting Officer Bluma was the only evidence on the subject, we might be inclined to determine the evidence does not support the resisting arrest statutory requirement in R.C. 2921.33(A) that the arrest be lawful. However, the Dayton officers did have statutory authority to arrest Terry and the evidence is that Terry continued to resist the Dayton officers. She tensed her muscles and resisted being handcuffed, requiring the efforts of both officers to accomplish

the task. She planted her feet and attempted to prevent the officers from moving her. They had to force her to keep moving. Given this resistance, we cannot say that the evidence is insufficient to support the resisting arrest charge.

**{¶ 28}** The second assignment of error is overruled.

C. *The challenged evidence was admissible.*

**{¶ 29}** The third assignment of error alleges that the trial court erred by allowing Officer Bluma to use pejorative language in his testimony to describe Terry's yelling to O'Connell not to talk to the police and erred by showing the video recording from Officer Bluma's cruiser. "We will not disturb a trial court's evidentiary rulings unless we find 'an abuse of discretion that has created material prejudice.' " *State v. Johnson*, 144 Ohio St.3d 518, 2015-Ohio-4903, 45 N.E.3d 208, ¶ 53, quoting *State v. Noling*, 98 Ohio St.3d 44, 2002-Ohio-7044, 781 N.E.2d 88, at ¶ 43.

**{¶ 30}** As an initial matter, Terry did not object at trial to this testimony from Officer Bluma, so she has waived all but plain error. "In order to prevail under a plain error analysis, [the appellant] bears the burden of demonstrating that the outcome of the trial clearly would have been different but for the errors. *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978); Crim. R. 52(B). Notice of plain error 'is taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.' *Id.* at ¶ 3 of the syllabus." *State v. Coots*, 2015-Ohio-126, 27 N.E.3d 47, ¶ 48 (2d Dist.).

**{¶ 31}** Of course, evidence is not inadmissible merely because it is prejudicial. Were this the case, no defendant would be convicted. It is only if there is unfair prejudice that evidence may be excluded and then only if the danger of unfair prejudice substantially outweighs the probative value of the statement. Evid.R. 403(A). Here, Officer Bluma

testified that while he was trying to talk to O'Connell, Terry repeatedly yelled that O'Connell should not say anything. Her yelling interfered with his ability to find out from O'Connell what had happened: "[S]he was distracting me to the point where I couldn't focus on talking to him." (Trial Tr. 23). Bluma testified that "her behavior escalat[ed] to the point where I had to tell her that her behavior was unacceptable." (*Id.*). He "told her that her behavior is unacceptable and she needs to calm down." (*Id.* at 24).

**{¶ 32}** Terry argues that Officer Bluma's referring to her invocation of constitutional rights as "unacceptable behavior" severely prejudiced her, though she does not say how. After reviewing Bluma's testimony, we do not think that he is referring to *what* she was yelling to O'Connell so much as that she was yelling. Her yelling made it difficult for Bluma to hear what O'Connell was saying, which is why he told Terry to calm down. Also, we doubt very much that without this testimony the trial court would have found Terry not guilty.

**{¶ 33}** Turning to the video, Terry argues that it does not satisfy the relevancy requirement in Evid.R. 402. Because the video begins after her arrest, she says, it does not show her pre-arrest conduct that is the basis of the resisting-arrest conviction. But Officer Bluma testified that the screaming, cursing, banging, and shaking of the cruiser heard and seen in the video is a continuation of her earlier conduct. So the video tends to make it more probable that Terry resisted the officers' efforts to arrest her. Terry alternatively argues that the video is inadmissible under Evid.R. 403, because its probative value is substantially outweighed by the danger of unfair prejudice. She says that showing the video prejudiced her and prevented her from having a fair trial. We watched the video, and we see little danger of unfair prejudice.

**{¶ 34}** We note that this was a bench trial. "[I]n reviewing a bench trial, an appellate court presumes that a trial court considered nothing but relevant and competent evidence in reaching its verdict. The presumption may be overcome only by an affirmative showing to the contrary by the appellant." *State v. Wiles*, 59 Ohio St.3d 71, 86, 571 N.E.2d 97 (1991), citing *State v. Post*, 32 Ohio St.3d 380, 384, 513 N.E.2d 754 (1987); *see also State v. Thomas*, 97 Ohio St.3d 309, 2002-Ohio-6624, 779 N.E.2d 1017, ¶ 57 ("In contrast to juries, judges are presumed to know the law and expected to consider only relevant, material, and competent evidence during their deliberations."). Terry does not point to anything in the record that suggests the trial court considered anything but competent, credible evidence in arriving at its verdicts.

**{¶ 35}** The third assignment of error is overruled.

### III. Conclusion

**{¶ 36}** We have overruled each of the assignments of error and the judgment of the trial court is affirmed.

. . . . . . . . . . . .

DONOVAN, P.J., concurs.

FROELICH, J., concurring:

**{¶ 37}** I concur. I note, however, that the intersection of an officer's authority outside of his or her territorial jurisdiction, *see, e.g., State v. Brown*, 143 Ohio St.3d 444, 2015-Ohio-2438, 39 N.E.3d 496, and an officer's caretaking responsibilities, *see e.g., State v. Dawley*, Fifth District Fairfield No. 15-CA-66, 2016-Ohio-2904, could, with slightly different facts, result in a different outcome.

. . . . . . . . . .

Copies mailed to:

Barbara J. Doseck
Stephanie L. Cook
Troy Daniels
Hilary Lerman
Hon. Christopher D. Roberts