[Cite as *State v. Casey*, 2017-Ohio-848.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | C.A. CASE NO.   27210 |
| | : | |
| v. | : | T.C. NO. 15CRB8245 |
| | : | |
| MICHAEL A. CASEY | : | (Criminal Appeal from |
| | : |  Municipal Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

# O P I N I O N

Rendered on the ____10th____ day of _____March_____, 2017.

. . . . . . . . . . .

GARRETT P. BAKER, Atty. Reg. No. 0084416, Assistant City Prosecutor, 335 W. Third Street, Rm. 372, Dayton, Ohio 45402
       Attorney for Plaintiff-Appellee

CHANNING M. KORDIK, Atty. Reg. No. 0090931, 2160 Kettering Tower, Dayton, Ohio 45423
       Attorney for Defendant-Appellant

. . . . . . . . . . . .

DONOVAN, J.

{¶ 1}  This matter is before the Court on the August 1, 2016 Notice of Appeal of Michael A. Casey.   Casey appeals from his July 29, 2016 Judgment Entry of Conviction, issued after a bench trial in Dayton Municipal Court, on one count of obstructing official business, in violation of R.C. 2921.31(A), and one count of resisting arrest, in violation of

R.C. 2921.33(A), both misdemeanors of the second degree. Casey was fined $50.00 for each offense and ordered to pay court costs. We hereby affirm the judgment of the trial court.

{¶ 2} Casey was charged by way of Criminal Complaint with the above offenses on December 20, 2015. He pled not guilty the following day, and the trial was held on March 8, 2016. At the start of proceedings, the prosecutor indicated to the court that the State had offered to accept a plea of guilty to obstructing official business in exchange for the withdrawal of the resisting arrest charge, and that Casey rejected the offer.

{¶ 3} The State called Officer Nicholas Brienza as its first witness. Brienza testified that he is employed as an officer with the City of Dayton Police Department, having been so employed for three years. He testified that on December 20, 2015, he was in a marked cruiser and in the uniform of the day, and that while he and Officer Dilley were on an unrelated call on Huffman Avenue, a passerby named Cody Schneider flagged the officers down. Over objection, Brienza testified that Schneider "told us that his child's mother was involved in some type of domestic violence related incident at her house on Smithville," and that the house was "right across from Kroger on Smithville." After speaking to him, Brienza testified that he and Dilley proceeded in separate cruisers to South Smithville.

{¶ 4} While en route, according to Brienza, dispatch advised that they had received a 911 hang-up call from 1013 South Smithville, and "we knew that that location that was announced over the radio was across from Kroger on South Smithville." He stated that two other officers had already been dispatched to the address. According to Brienza, Schneider "was in his own vehicle and he arrived separately. He was actually parked in

the rear of the house. There's an alley way. And that's where he was parked." Brienza stated that he proceeded to the rear of the house, while Dilley went to the front door to attempt to make contact with the occupants. Brienza stated that while he waited, "the back door opens and out walks both Michael Casey and Jordan Casey." Brienza testified that Jordan Casey is Michael Casey's daughter.

{¶ 5} Over objection, Brienza testified that "immediately after they both walked out of the house, [Schneider] pointed at Michael Casey and said that's whose [sic] beating her ass." The following exchange occurred:

Q. So, upon hearing that, what do you proceed to do?

A. Mr. Casey is walking down the steps at that point towards the gate. I ask . . . I tell him come talk to me. I want to find out what's going on.

Q. And does he come talk to you?

A. No, he doesn't. He stays behind the gate.

Q. Does he look at you when you say that to him?

A. Yes.

Q. Ok. Approximately how far away is he from you? Rough estimate?

A. Maybe eight to ten feet.

Q. Ok. And, so he does not come to you. Then what does he proceed to do?

A. He says that "no, I am not going to talk to you." And begins to walk away from the fence, back towards the steps.

Q.   Ok.   And what do you do?

A.   I told him "No.   Stop.   Come here.   Come talk to me." He still refused.

Q.   Ok.   And does that hamper or impede your efforts to perform some type of investigation?

A.   Yes, it does.

Q.   Ok.   And what happens then?

A.   He begins to walk towards the steps again.   Officer Dilley overheard this.   So, he came to the back door.   And he assisted me. I told him again to stop and to put his hands behind his back.

Q.   Does he proceed to do that?

A.   He does not.

Q.   And does that also hamper or impede your efforts now?

A.   Yes.

Q.   And does it hamper or impede your efforts to perform an arrest?

A.   Yes.

Q.   Ok.   And what were you going to arrest him for?

A.   Obstructing at that point.

Q.   Ok.   And what happens then?

A.   He still proceeds to not put his hand behind his back.   Officer Dilley's there.   He tells him multiple times to put his hands behind his back. He refused.   We placed him on the ground.   We told him multiple times to stop resisting.   His hands were under his body.

Q. Ok. And what is . . . Do you make any . . . do you have handcuffs out at that point? Or does Dilley have handcuffs out at that point?

A. I do not have any out at that point. I had my flashlight in my hand. Officer Dilley was able to grab a hold of his left arm and place it behind his back. I was having a very difficult time grabbing a hold of his right arm because it was tucked under his body.

Q. So, were you able to immediately secure his arms for an arrest?

A. No.

Q. Ok. And as his arm is tucked under his body, what do you do in an effort . . . in your efforts?

A. I had a flashlight in my hand. My duty issued flashlight. I tried to place it in his elbow area under his armpit to leverage it out from under his body, so that I could put it behind his back. That was not working.

Q. Ok. So were you ultimately able to get his arm out?

A. I was. I had to utilize my asp. I placed it, because it's a little bit longer, I placed it in the same position. And I was able to leverage his arm out from under his body.

Q. Ok.

A. And grab a hold of his right arm.

Q. Ok. And is he being informed he is under arrest at that point?

A. Yes.

Q. Ok. And does he make any statements to you?

A.   No to me, no.

Q.   Alright, is he complying with being arrested at that point?

A.   After he is in handcuffs, yes.

Q.   After he is secured in the handcuffs?

A.   Yes.

Q.   But, given the struggle that occurred, were you immediately able to effectuate that arrest?

A.   No.

* * *

Q.   And what happens once he is secured in handcuffs?

A.   We escorted him to my cruiser and he started to complain of some pain in his arm.

Q.   Ok.   Did that essentially end your encounter with him?

A.   Yes.

{¶ 6} On cross-examination, Brienza testified that the other officers who had been dispatched to the scene arrived after Casey was in custody.   Brienza stated that when he arrived, he did not detect any disturbance from inside the Smithville residence. He stated that no one was touching Jordan when she emerged from the residence, that he did not observe signs of injury to her person, and that Jordan did not yell out for help. Brienza stated that he did not observe any weapons on Casey, and that Casey did not run from the house or back into it. Brienza stated that when the officers cuffed Casey, Brienza grabbed one arm, Dilley grabbed the other, and they took Casey to the ground. At the time, Brienza stated that Casey's right arm "was tucked tightly underneath his

body." When asked if he asked Casey for his name or identification, Brienza responded, "I did not get a chance to." When asked on re-direct examination how many steps Casey took away from him when told to stop, Brienza responded, "* * * The first time I told him to stop was approximately five to ten steps. That's when I approached him. And the second time, probably five to eight. Somewhere in there. * * *."

{¶ 7} Officer Harry Dilley testified that he has been employed with the Dayton Police Department for three and a half years. He testified that he came into contact with Casey on December 20, 2015. According to Dilley, when he responded to the Smithville Avenue address, it was dark outside. He testified that he went to the front door to make contact, based upon what Schneider had told him and the 911 hang-up phone call. He testified that Jordan Casey came to the front door and advised him through the door that she did not have a key to that door and so could not exit the home that way. Dilley stated that he told Jordan to go to the back door, and that he started to walk to the back of the home.

{¶ 8} Dilley testified that "as I am getting to the back, I see Mr. Casey walking away from Officer Brienza. As Officer Brienza is telling him to come talk to him." Dilley estimated that he observed Casey walk about eight steps away. At the time, Dilley testified that Casey "just says 'no' or 'no I'm not talking to you' or 'no, I don't want to talk to you.' Something very similar to that." Dilley testified that he heard Brienza tell Casey to stop once more, and that Casey continued to walk away. According to Dilley, he began to approach Casey, and at the time, Brienza told Casey to place his hands behind his back. Dilley testified, "I go to Mr. Casey's left side and grab his left arm. Try to place his left arm behind his back." He stated, "I'm ordering Casey . . . Mr. Casey to place his

hands behind his back and he's still refusing to place his hands behind his back." Dilley also stated that he told Casey he was under arrest "while we were on our feet." Dilley testified, "we escorted Mr. Casey to the ground and told him, again, to place his hands behind his back and stop resisting." Dilley stated that the officers took Casey to the ground because "it was just easier to get his hands behind his back while he was on a flat surface or on a surface where he can't go anywhere. We, kind of, got him controlled in one little area." Dilley testified that he told Casey to stop resisting at least four times after they were on the ground.

{¶ 9} When asked if Casey was hampering or impeding his abilities to effectuate an arrest, Dilley responded in the affirmative. When asked in what manner, Dilley responded, "just by resisting. Not placing his hand behind his back. We weren't able to investigate the domestic violence allegations." Dilley stated that Casey continued to refuse to comply, and finally, he "was able to control his left side. Officer Brienza had a little bit more difficulty getting his right hands from underneath his body. Officer Brienza used his flashlight and later his asp to try to get Mr. Casey's arm free." Dilley stated that he felt tension in Casey's left arm, "like he was trying to put it back underneath his body." Dilley stated that he ultimately placed the cuffs on Casey and placed him in his cruiser. On cross-examination, Dilley indicated that he did not hear a disturbance from inside the residence as he approached the front door, and that he did not observe any injures to Jordan's person.

{¶ 10} At the conclusion of testimony, defense counsel moved for an acquittal, and the court overruled the motion. The court asked the parties to provide written closing arguments addressed to whether "there was sufficient evidence to show obstructing."

{¶ 11} "Defendant's Post-Trial Memorandum" was filed on March 28, 2016. Citing *State v. Crawford*, 2d Dist. Montgomery No. 25506, 2013-Ohio-4398, Casey asserted that this Court "held that an overt act is required to sustain a conviction for obstructing official business," and that "failure to cooperate with the police in the execution of a search warrant is insufficient as a matter of law to constitute obstructing official business." According to Casey, the "State must also show that not only was an overt act committed with the intent to obstruct, but also that the defendant succeeded in actually hampering or impeding the police officers."

{¶ 12} Casey asserted that "here, there is no evidence that Mr. Casey's actions hampered or impeded the officers in performing their official duties." He argued that "the person that flagged down the officers was not on the scene of the alleged domestic situation. However, when the officers arrived at the residence, there were no indications of an argument or fight between the people at the residence. There was no sign of an apparent emergency." Casey asserted that he "simply walked towards the gate in his own yard. * * * The officers did not see any weapons or paraphernalia on Mr. Casey. * * * When the officers approached Mr. Casey, he merely expressed his desire not to speak with the officers. He then walked back towards his house."

{¶ 13} Casey further argued that a "person cannot resist an unlawful arrest." He argued that the officers lacked probable cause to arrest him. He argued that "the evidence presented at trial is insufficient to sustain a conviction for obstructing official business," and that "it is also insufficient to support probable cause to arrest Mr. Casey. Importantly, an entire element, an 'overt act,' is missing from the evidence adduced at trial." Casey argued, alternatively, "there was no probable cause to arrest for domestic

violence or assault either. The information received by the officers was not corroborated when they arrived at the scene."

{¶ 14} On April 14, 2016, "Plaintiff's Memorandum of Law" was filed. The State argued that by "fleeing from [O]fficer Brienza and delaying his investigatory detention i.e. '[*Terry*] stop' and arrest, the defendant affirmatively acted contrary to Officer Dill[e]y and Officer Brienza's directives." The State directed the court's attention to *State v. Cobb*, 2d Dist. Montgomery No. 19474, 2003-Ohio-3034, and asserted that "a suspect's flight after an officer identified himself as an officer and attempted to stop the suspect for jaywalking constitutes legally sufficient evidence to support a conviction for obstructing official business."

{¶ 15} The State asserted as follows [footnote omitted]:

In the case at bar, the above captioned defendant is guilty of obstructing official business. Here, officers received a 911 hang up from the defendant's address, and an identified citizen informant provided information that the defendant beat his daughter. Please note, of all the types of informants, the identified citizen informant is the most reliable. The statements Co[d]y Schneider made provided the officers with a reasonable articulable basis to stop the defendant for domestic violence. As such, the defendant had no privilege or right to prevent, obstruct, or delay the performance of an authorized act i.e. "*Terry* stop" by officers. Additionally, the defendant had no right to resist his arrest, which was an act done by the defendant, which hampered or impeded the officer in the performance of their [sic] lawful duties.

**{¶ 16}** The State argued that Casey "fled from officers in direct contravention of the officers' orders. The defendant had no privilege to do so, and his purpose was to prevent, obstruct, or delay the performance of by the officers of their authorized act." (Sic). The State argued that Casey "was lawfully under arrest for obstructing official business and actively resisted that arrest by refusing to put his hands behind his back and tucking his arm under his body."

**{¶ 17}** On June 20, 2016, the municipal court issued an "Entry Finding Defendant Guilty of Obstructing Official Business and Resisting Arrest." The court determined in part as follows:

> In the case at hand, the Officers were trying to investigate a domestic violence incident, they had reason to believe that Defendant was the offender, and they needed to detain him in order to do their investigation. Defendant's acts of walking away, after being told repeatedly to stop so the Officers could conduct their investigation, obstructed official business. Defendant resisted arrest by tucking his arm under his body and struggling with the Officers, making it difficult for them to secure his hands behind his back.
>
> The court finds that the State has proven beyond a reasonable doubt that Defendant is Guilty of Obstructing Official Business, in violation of R.C. 2921.31(A) and Resisting Arrest, in violation of R.C. 2921.33(A).

Casey was sentenced on July 18, 2016.

**{¶ 18}** Casey asserts two assignments of error herein, which we will consider together. They are as follows:

THE COURT ERRED IN FINDING DEFENDANT GUILTY WHERE THE EVIDENCE WAS NOT SUFFICIENT TO MEET THE ELEMENTS OF THE OFFENSE AND WHERE THE SUBSEQUENT FINDING OF GUILTY WAS CONTRARY TO THE SUFFICIENCY OF THE EVIDENCE.

And,

THE FINDING OF GUILTY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

**{¶ 19}** Regarding obstructing official business, Casey asserts as follows:

* * * Mr. Casey did not act with purpose to prevent, obstruct, or delay the performance of Officers Dilley or Brienza. It's clear through testimony that Mr. Casey merely walked a maximum total of 10-18 feet toward his own home. Placing a few yards of distance between oneself and a police officer at a walking pace within the confines of the parcel of land at which the encounter began can hardly be construed by a reasonable police officer as an overt act purposefully preventing, obstructing, or delaying the performance of that officer from doing his or her job. Further, though Mr. Casey said that he did not want to speak with the Officers, the Officers did not specifically indicate to Mr. Casey that they wanted to speak with him for the purpose of performing any official duty.

**{¶ 20}** Casey further asserts as follows:

With regard to the offense of resisting arrest, because Mr. Casey was unlawfully arrested for a crime which he did not commit and for which there was no probable cause to arrest him, namely Obstruction of Official

Business, he cannot be found to be guilty of Resisting Arrest. R.C. 2921.33(A).

* * *

Lastly, the testimony is clear that Mr. Casey was not brandishing a weapon of any kind during the incident and he did not cause harm to either Officer. The testimony only shows that Mr. Casey did not cooperate in allowing the Officers to place him under arrest; there is no evidence that shows Mr. Casey acted recklessly or with force. Mr. Casey had his arms underneath his body however; this is not beyond a reasonable doubt, an act of force nor is it a reckless act.

{¶ 21} The State responds as follows:

While not entirely clear from the body of Appellant's argument, in his first and second assignment of error, Appellant seems to argue that his conviction for obstructing official business was not supported by sufficient evidence, and because the conviction for obstructing official business was not supported by sufficient evidence, Appellant's conviction for resisting arrest was against the manifest weight of the evidence. The crux of Appellant's argument seems to be that Appellee failed to present sufficient evidence to prove the mens rea element of "purpose to prevent, obstruct, or delay" the performance of Officer Dilley or Officer Brienza. Appellant, also argues, without being explicit, that Appellee failed to prove an "act" for obstructing official business. Appellant states that he merely refused to speak to the Officers and did not "do anything" to obstruct any officer

business. * * *

{¶ 22} According to the State, "there was sufficient evidence to establish Appellant is guilty of obstructing official business." The State asserts that the "statements Cody Schneider made provided the officers with a reasonable articulable basis to stop Appellant for domestic violence. As such, Appellant had no privilege or right to prevent, obstruct, or delay the performance of an authorized act i.e. '*Terry* stop' by officers." Finally, the State argues that, since it "presented sufficient evidence for a finding of guilty on the obstructing official business charge, Appellant's conviction for resisting arrest under R.C. 2921.33 is not against the manifest weight of the evidence."

{¶ 23} We note that in his brief, Casey addresses his assigned errors together, and in neither of them does he mention a specific conviction. For the sake of completeness, we will consider whether each conviction herein is supported by sufficient evidence and not against the manifest weight of the evidence.

{¶ 24} Regarding the sufficiency of the evidence, this Court has previously noted:

"A sufficiency of the evidence argument disputes whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law." *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009–Ohio–525, ¶ 10, citing *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997). When reviewing whether the State has presented sufficient evidence to support a conviction, "the relevant inquiry is whether any rational finder of fact, after viewing the evidence in the light most favorable to the State, could have found the essential elements of the crime proven beyond a reasonable doubt." *State*

*v. Dennis*, 79 Ohio St.3d 421, 430, 683 N.E.2d 1096 (1997), citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). A guilty verdict will not be disturbed on appeal unless, "reasonable minds could not reach the conclusion reached by the trier-of-fact." *Id.*

*State v. Wilson*, 2d Dist. Montgomery No. 27001, 2016-Ohio-7329, ¶ 6.

{¶ 25} In contrast, regarding the manifest weight of the evidence, this Court has noted:

The weight of the evidence concerns the inclination of the greater amount of credible evidence offered to support one side of the issue rather than the other. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). When presented with a challenge to the manifest weight of the evidence, an appellate court may not substitute its view for that of the trier of fact, but must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Id.* at 387. "A judgment should be reversed as being against the manifest weight of the evidence 'only in the exceptional case in which the evidence weighs heavily against the conviction.' " *Id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

In *State v. Vencill*, 10th Dist. Franklin No. 11AP–1050, 2012–Ohio–4419, the Tenth District Court of Appeals observed that:

In addressing a manifest weight of the evidence argument, we are able to consider the credibility of the witnesses. *State v. Cattledge*, 10th Dist. No. 10AP–105, 2010–Ohio–4953, ¶ 6. However, in conducting our review, we are guided by the presumption that the jury, or the trial court in a bench trial, " 'is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.' " *Id.*, quoting *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984). Accordingly, we afford great deference to the trier of fact's determination of witness credibility. (Citations omitted).

*Vencill*, at ¶ 11.

*State v. Stevenson*, 2d Dist. Montgomery No. 26583, 2016-Ohio-321, ¶ 8-9.

{¶ 26} Regarding obstructing official business, R.C. 2921.31(A) provides: "No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties."

{¶ 27} As this Court has previously noted:

" 'Ohio Courts have consistently held that in order to violate the obstructing official business statute a defendant must engage in some affirmative or overt act or undertaking that hampers or impedes a public

official in the performance of the official's lawful duties.' " *State v. Harrell*, 2d Dist. Montgomery No. 21763, 2007-Ohio-4550, ¶ 12, quoting *State v. Trestel*, 2d Dist. Montgomery No. 20822, 2005-Ohio-5236, ¶ 16.   A mere failure or refusal to respond to an officer's request does not constitute obstructing official business.   *Id*., citing *State v. Christman*, 2d Dist. Montgomery No. 19039, 2002-Ohio-2915 ("[T]he charge of obstructing official business requires an affirmative act done purposely to hinder the police from performing their duties, and it is not merely a failure to respond to an officer's request.")

*State v. Crawford*, 2d Dist. Montgomery No. 25506, 2013-Ohio-4398, ¶ 17.

{¶ 28} Pursuant to R.C. 2901.22(A), a person acts purposefully if he acts with the "specific intention to cause a certain result." In *State v. Terry*, 2d Dist. Montgomery No. 26722, 2016-Ohio-3484, ¶ 22, this Court noted:

* * *   "Because no one can know the mind of another, a defendant's intent is 'not discernible through objective proof.'   *State v. Huffman* (1936), 131 Ohio St. 27, 1 N.E.2d 313, at syllabus ¶ 4.   Rather, a defendant's intent in acting must be 'determined from the manner in which it [the act] is done, the means used, and all other facts and circumstances in evidence.'   *State v. Wellman* (2007), 173 Ohio App.3d 494, 2007-Ohio-2953, 879 N.E.2d 215, at ¶ 15."   *State v. McCoy,* 2d Dist. Montgomery No. 22479, 2008-Ohio-5648, ¶ 14.   As to the required act, "the State must prove not only the commission of an overt act done with an intent to obstruct the officers, 'but it also must prove that [the defendant] succeeded in actually hampering or

impeding them.' " *State v. Crawford*, 2d Dist. Montgomery No. 25506, 2013-Ohio-4398, ¶ 21, quoting *McCoy* at ¶ 16. But "this element does not require that the [defendant] cause the officers to fail in their duties, but only that, by acting, [the defendant] disrupted their performance of them." *Id.*

{¶ 29} As this Court noted in *Terry*, ¶ 23:

Walking away from a police investigation and failing to heed a police officer's orders to stop can be sufficient to find a person guilty of obstructing official business. In *Dayton v. Turic*, 2d Dist. Montgomery No. 20149, 2005–Ohio–131, we held that a defendant's "belligerent conduct, her refusal to give her identification and her refusal to stop walking away from the officer when instructed to stop obstructed the officer's investigation of the altercation between [the defendant] and [others]." (Citations omitted.) *Turic* at ¶ 26. In that case, the defendant refused to show identification when a police officer requested it and attempted to exit the restaurant in which an altercation involving the defendant had occurred. Following the defendant, the officer told her several times to stop because the officer was still investigating. The defendant did not stop walking away, so the officer grabbed her and tried to handcuff her. Under the facts of that case, we said, "[w]hen [the defendant] repeatedly refused to comply with [the officer]'s instructions, the officer was within her rights to arrest [the defendant] for obstructing official business." *Id.* The Tenth District concluded similarly in *State v. Kates*, 169 Ohio App.3d 766, 2006–Ohio–6779, 865 N.E.2d 66 (10th Dist.). There, during an investigation in which the defendant was

identified having been involved in a traffic accident, the defendant walked away from a police officer, ignoring the officer's commands to stop. The defendant contended that the officer's command to stop was not an authorized act because the officer did not have probable cause to arrest the defendant for any offense. The defendant contended that the officer's authority was limited to an investigatory stop under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and that mere flight from a *Terry* stop does not constitute obstructing official business. The Tenth District disagreed. The officer repeatedly ordered the defendant to stop, said the court, and the defendant was aware that the officer was trying to detain him, yet he continued to walk away. The defendant's failure to heed the officer's orders to stop, concluded the court, was an affirmative act that hindered or impeded the officer in the performance of his official duties in investigating the accident. Finally, the Third District in *State v. Dice*, 3d Dist. Marion No. 9–04–41, 2005–Ohio–2505, upheld the defendant's conviction for obstructing official business based on his refusal to stop. In that case, officers called out to the defendant to stop, but he continued walking away, despite knowing that the officers were telling him to stop. When the defendant looked back, he saw the officers coming after him, so he began to run away because, the defendant said, he was scared. The appellate court said that clearly the officers were investigating a situation and wanted the defendant. The court concluded that the defendant acted with the specific intent to prevent, obstruct, or delay the officers from their ongoing

investigation.

{¶ 30} Here, Brienza testified that Cody Schneider flagged him and Dilley down and advised them that his child's mother was involved in a domestic violence incident on Smithville Road. While en route to the area, the officers were advised of a 911 hang-up call from 1013 South Smithville, and that other officers had been dispatched to the scene. Schneider also proceeded to the address, and upon observing Casey, immediately pointed to him and stated, "that's whose [sic] beating her ass." In order to investigate the circumstances before him, Brienza testified that he directed Casey to come speak to him, and we conclude that such a directive is an authorized act to further the officers' investigation. Brienza indicated that Casey looked at him when Brienza addressed him and refused to comply, remaining instead behind the gate and stating, "no, I am not going to talk to you." However, standing alone, refusing to talk is not obstruction. At the same time, Casey began to walk away from the fence, and Brienza testified that he again directed him to stop and approach Brienza, and again Casey refused and contined to walk away. As Dilley joined Brienza in the rear of the home, Brienza once more told Casey to stop and place his hands on his head, and Casey again refused. Dilley's testimony was consistent with Brienza's, in that he stated that when he arrived at the rear of the home, he observed Casey walking away from Brienza, counter to Brienza's directives. Dilley stated Casey also verbally refused to comply. Brienza stated that Casey's conduct impeded his ability to carry out his investigation.

{¶ 31} For the foregoing reasons, we conclude that Casey's conviction for obstructing official business is supported by sufficient evidence. In other words, the State presented sufficient evidence on each element to sustain the verdict as a matter of

law, namely that Casey, without privilege, and with purpose to prevent, obstruct, or delay the officers' investigation, impeded Brienza's performance of his duties by refusing to comply with his directive to stop and continuing to walk away, contrary to Brienza's repeated directives. We further conclude that this is not an exceptional case requiring a reversal as being against the manifest weight of the evidence; the trial court clearly credited the officers' testimony, and we defer to the court's credibility assessment.

{¶ 32} Regarding resisting arrest, R.C. 2921.33(A) provides as follows: 'No person, recklessly or by force, shall resist or interfere with a lawful arrest of the person or another." As this Court further noted in *Terry*, 2016-Ohio-3484, at ¶ 26:

To prove that a defendant committed the offense of resisting arrest, the state must prove that the arrest was "lawful," R.C. 2921.33(A). " 'An arrest is "lawful" if the surrounding circumstances would give a reasonable police officer cause to believe that an offense has been or is being committed.' " *State v. Blair*, 2d Dist. Montgomery No. 24784, 2012-Ohio-1847, ¶ 8, quoting *State v. Sansalone*, 71 Ohio App.3d 284, 285-286, 593 N.E.2d 390 (1st Dist. 1991).

{¶ 33} As noted above, the evidence supporting Casey's conviction on the obstructing official business offense was sufficient, and his conviction is not against the manifest weight of the evidence. Brienza testified that the officers were not immediately able to effectuate an arrest of Casey, because when the officers approached him, he refused to put his hands behind his back after being told multiple times to do so, and they had to take him to the ground. Brienza stated that Casey was advised that he was under arrest at the time. According to Brienza, Casey placed his right arm under his body, and

Brienza was unable to secure it. He stated that he unsuccessfully tried to secure Casey's arm with his flashlight, and that he was ultimately only able to do so by means of his asp. Dilley stated that Casey struggled with him, and that he felt tension in Casey's left arm while he restrained him, as though Casey was trying to place his left arm under his body.

{¶ 34} We conclude that Casey's conviction for resisting arrest is supported by sufficient evidence, since the State presented evidence on each element, namely that Casey by force resisted or interfered with a lawful arrest for obstructing official business. Further, as noted above, the trial court clearly credited the officers' testimony, and we defer to the court's credibility assessment; accordingly, we conclude that Casey's conviction for resisting arrest is not against the manifest weight of the evidence.

{¶ 35} Based upon the foregoing, Casey's assigned errors are overruled. The judgment of the trial court is affirmed.

. . . . . . . . . . . . .

WELBAUM, J. and TUCKER, J., concur.

Copies mailed to:

Garrett P. Baker
Channing M. Kordik
Hon. Carl Sims Henderson