[Cite as *State v. Crawford*, 2013-Ohio-4398.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

STATE OF OHIO                               :

    Plaintiff-Appellee                  :       C.A. CASE NO.    25506

v.                                          :       T.C. NO.    12CRB5906

AARON E. CRAWFORD                           :          (Criminal appeal from
                                                        Municipal Court)

    Defendant-Appellant                 :

                                            :

          . . . . . . . . . .

**O P I N I O N**

Rendered on the _____4th_____ day of _____October_____, 2013.

. . . . . . . . . .

STEPHANIE L. COOK, Atty. Reg. No. 0067101, Chief Prosecutor, 335 W. Third Street, Room 372, Dayton, Ohio 45402
      Attorney for Plaintiff-Appellee

JAY A. ADAMS, Atty. Reg. No. 0072135, 36 N. Detroit Street, Suite 102, Xenia, Ohio 45385
      Attorney for Defendant-Appellant

. . . . . . . . . .

DONOVAN, J.

{¶ 1}    Defendant-appellant Aaron E. Crawford appeals his conviction and sentence for one count of obstructing official business, in violation of R.C. 2921.31(A), a

misdemeanor of the second degree. Crawford filed a timely notice of appeal with this Court on November 20, 2012.

{¶ 2} The incident which forms the basis for the instant appeal occurred on July 18, 2012, at approximately 8:35 p.m. when members of the Dayton Police Department's Special Investigation Division executed a search warrant for a residence located at 138 South Sperling Avenue in Dayton, Ohio. The search warrant was issued as a result of two controlled drug buys at the subject residence by Dayton Police. Detective Gregory Orick testified that although the appellant's name was not known, Crawford was the suspect described in the search warrant who was involved in the drug sales.

{¶ 3} Det. Orick testified that approximately nine to eleven detectives were involved in the execution of the search warrant. At least seven detectives went into the home during the initial entry, and another three detectives remained outside the residence for security purposes. The detectives were dressed in black cargo pants, raid shirts emblazoned with the Dayton Police badge, raid vests marked with "POLICE" on the front and back, black boots, helmets, and guns.

{¶ 4} Det. Orick testified that he believed there were two or three people inside the front parlor of the residence immediately prior to the execution of the search warrant. Upon approaching the residence, Det. Orick testified that the main door stood open, but the glass storm door on the outside of the house was closed. Det. Orick testified that he and the other officers could see inside the residence through the storm door and were able to identify a male and a female sitting on a couch in the living room. As the police approached the residence, a second male, later identified as Crawford, came to front door, yelled "Police,"

slammed the front door to the residence, and ran further into the interior of the house. Det. Orick and the other detectives then breached the front door using a battering ram and entered the residence. Det. Orick acknowledged in his testimony that Crawford did not lock the door. Ultimately, the detectives located seven individuals, including Crawford, in the residence. After removing the individuals from the residence, the detectives conducted a search pursuant to the warrant. Crawford testified that he realized the individuals walking up to the residence were armed, had helmets on, and wore glasses, but he asserted that he did not yell "Police" before slamming the front door.

{¶ 5} On July 19, 2012, Crawford was charged by criminal complaint with one count of obstructing official business, a misdemeanor of the second degree. At his arraignment, Crawford pled not guilty. Crawford's case was subsequently tried to the court on August 29, 2012. At the conclusion of trial, the court provided both parties the opportunity to file post-trial memoranda, and on September 13, 2012, the trial court found Crawford guilty as charged.

{¶ 6} On October 23, 2012, the trial court sentenced Crawford to ninety days in jail. Crawford was given credit for two days he previously served, and the trial court suspended an additional fifteen days of his sentence. The trial court then ordered Crawford to serve the remaining seventy-three days forthwith. The trial court ordered Crawford to pay court costs, but no fine was imposed.

{¶ 7} It is from this judgment that Crawford now appeals.

{¶ 8} Initially, we note that Crawford filed a motion for stay of his sentence pending the outcome of his appeal on October 23, 2012. The trial court, however, failed to

rule on Crawford's motion to stay. When a trial court fails to rule on a motion, the motion will be considered denied. *State v. Olah*, 146 Ohio App.3d 586, 2001-Ohio-1641, 767 N.E.2d 755 (9th Dist.). Thus, the trial court is presumed to have implicitly denied Crawford's motion to stay. We further note that Crawford has not paid the court costs assessed against him.

{¶ 9} Crawford's sole assignment of error states as follows:

{¶ 10} "THE VERDICT OF THE TRIAL COURT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

{¶ 11} In his sole assignment of error, Crawford contends that the trial court's decision finding him guilty of obstructing official business is against the manifest weight of the evidence. Although Crawford's assignment is couched in terms of manifest weight, he spends the majority of his argument attacking the sufficiency of the evidence used to convict him. Specifically, Crawford asserts that his actions prior to his arrest did nothing to "hamper or impede" the execution of the search warrant by Det. Orick and the police officers who accompanied him.

{¶ 12} "A challenge to the sufficiency of the evidence differs from a challenge to the manifest weight of the evidence." *State v. McKnight*, 107 Ohio St.3d 101,112, 2005-Ohio-6046, 837 N.E.2d 315. "In reviewing a claim of insufficient evidence, '[t]he relevant inquiry is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' (Internal citations omitted). A claim that a jury verdict is against the manifest weight of the evidence involves a different test. 'The court,

reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" *Id.*

{¶ 13} The credibility of the witnesses and the weight to be given to their testimony are matters for the trier of facts to resolve. *State v. DeHass*, 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967). "Because the factfinder * * * has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684 (Aug. 22, 1997).

{¶ 14} This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the trier of fact lost its way in arriving at its verdict. *State v. Bradley*, 2d Dist. Champaign No. 97-CA-03, 1997 WL 691510 (Oct. 24, 1997).

{¶ 15} Crawford was convicted of Obstructing Official Business in violation of R.C. 2921.31(A), which states: "No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within

the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties."

{¶ 16} The State argues that two actions by Crawford were overt acts which constitute the crime of obstructing official business. First, Det. Orick testified that Crawford yelled "Police" after he observed several armed officers walking towards the residence dressed in tactical raid gear. Second, after yelling "Police," Crawford shut the front door of the residence. The State asserts that as a direct result of Crawford's actions, the police officers' effort at serving the search warrant was compromised by undue delay. By yelling "Police" and slamming the door, the State argues that Crawford notified the other occupants of the house that the police were coming in, thereby eliminating any tactical advantage of surprise, increasing the possibility that evidence would be destroyed, and giving the occupants additional time in which to arm themselves. The State also argues that after Crawford slammed the door, the police were unable to clear the front room of the house as quickly and efficiently as they could have if the door had remained open.

{¶ 17} "'Ohio courts have consistently held that in order to violate the obstructing official business statute a defendant must engage in some affirmative or overt act or undertaking that hampers or impedes a public official in the performance of the official's lawful duties.'" *State v. Harrell,* 2d Dist. Montgomery No. 21736, 2007-Ohio-4550, ¶12, quoting *State v. Prestel,* 2d Dist. Montgomery No. 20822, 2005-Ohio-5236, ¶16. A mere failure or refusal to respond to an officer's request does not constitute obstructing official business. *Id.*, citing *State v. Christman,* 2d Dist. Montgomery No. 19039, 2002-Ohio-2915 ("[T]he charge of obstructing official business requires an affirmative act done purposely to

hinder the police from performing their duties, and it is not merely a failure to respond to an officer's request.").

{¶ 18} The failure to cooperate with the police in the execution of a search warrant is insufficient as a matter of law to amount to obstructing official business. *Cleveland v. Corrai*, 70 Ohio App.3d 679, 591 N.E.2d 1325 (8th Dist.1990). In *Corrai*, the court stated as follows:

> [A] search warrant by its very nature directs and permits a police officer to enter a particular premise and search for and seize without regard to the persons or the premises. To accept the city's position that appellees' behavior amounted to obstructing official business we would have to conclude that a person whose premises are being searched must cooperate and aid in the execution of the search warrant. Appellant has cited no authority which shows that there is an obligation to cooperate with the execution of a warrant and that failure to provide information which would shorten the search or lead to the materials sought would amount to obstructing official business.

*Id.*

{¶ 19} When Crawford initially observed the officers walking towards the residence, and he exclaimed "Police," none of the officers had yet announced that they possessed a search warrant. Moreover, none of the officers ordered Crawford to leave the front door open. Assuming that the trial court credited Det. Orick's testimony that Crawford yelled "Police," there is no evidence in the record that his statement was made

with an intent to hamper or impede the execution of the search warrant, and certainly no evidence that his verbal alert actually had the effect of hampering or impeding the execution of the search warrant. The door was, in fact, unlocked, and the officer with the battering ram was in line. Crawford was under no duty to remain silent after observing the police officers walking up to the residence.

{¶ 20} With respect to Crawford closing the front door of the residence, while arguably an affirmative act under these circumstances, here it amounted to no more than a refusal to cooperate with the officers. See generally *State v. Crowell*, 189 Ohio App.3d 468, 2010-Ohio-4917, 938 N.E.2d 1115, ¶ 12 (2d Dist.). Although shutting the door constitutes an overt act, the State must prove not only the commission of an overt act done with an intent to obstruct the officers, "but it also must prove that [the defendant] succeeded in actually hampering or impeding them." *State v. McCoy,* 2d Dist. Montgomery No. 22479, 2008-Ohio-5648, ¶16, citing *State v. Kates,* 169 Ohio App.3d 766, 2006-Ohio-6779, 865 N.E.2d 66 (10th Dist.), ¶21; *State v. Cooper,* 151 Ohio App.3d 790, 2003-Ohio-1032, 786 N.E.2d 88 (2d Dist.). There was no evidence offered to show that Crawford's action of closing the front door had the effect of hampering or impeding the investigation of the officers, who had not yet reached the porch of the residence and were still standing on the sidewalk in front of the house. The approaching police officers were equipped with a battering ram which they used to breach the door to the residence. Upon gaining immediate entry to the residence, the police officers executed the search warrant and secured the occupants just as they would have done if Crawford had not shut the front door. Any purported delay caused by Crawford's actions was de minimus under the circumstances, and

the police were clearly not hampered or impeded in any way from executing the search warrant. The record is devoid of any evidence that the occupants attempted to flee, conceal drugs, and/or arm themselves. The very nature of the warrant permitted the police to use a ram to gain entry, they were equipped to do so, and Crawford was not required to assist them.

{¶ 21} Because the evidence used to convict Crawford was insufficient as a matter of law to establish obstructing official business beyond a reasonable doubt, the issue of whether the trial court's guilty verdict was against the manifest weight of the evidence is moot.

{¶ 22} Crawford's sole assignment of error is sustained.

{¶ 23} Crawford's sole assignment of error having been sustained, the judgment of the trial court is reversed and his conviction is vacated.

. . . . . . . . . .

FAIN, P.J. and FROELICH, J., concur.

Copies mailed to:

Stephanie L. Cook
Jay A. Adams
Hon. Christopher D. Roberts