**[Cite as *State v. Blair*, 2023-Ohio-88.]**

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 29378 |
| | : | |
| v. | : | Trial Court Case No. CRB2101259 |
| | : | |
| WILLIAM L. BLAIR, JR. | : | (Criminal Appeal from |
| | : | Municipal Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 13th day of January, 2023.

. . . . . . . . . . .

KAREN B. GROSETH, Atty. Reg. No. 0090201, Prosecuting Attorney, Miamisburg
Municipal Court, 130 West Second Street, Suite 1818, Dayton, Ohio 45402
      Attorney for Plaintiff-Appellee

RICHARD L. KAPLAN, Atty. Reg. No. 0029406, P.O. Box 751192, Dayton, Ohio 45475
      Attorney for Defendant-Appellant

. . . . . . . . . . . . .

EPLEY, J.

{¶ 1} Defendant-Appellant William L. Blair, Jr., appeals from his conviction in the Miamisburg Municipal Court after he was found guilty of obstructing official business, persistent disorderly conduct, and failure to disclose personal information. For the reasons that follow, the trial court's judgment will be affirmed in part and vacated in part.

## I.      Facts and Procedural History

{¶ 2} In the early morning hours of October 16, 2021, Officer Josh Labensky was on foot patrol at the Yellow Rose Nightclub, a bar in West Carrollton. He frequently patrolled there around closing time to ensure that patrons exited the establishment and departed in a relatively orderly and safe fashion. On that particular night, he was summoned inside the bar, where he witnessed two males, Bruce Denney (the manager of the bar) and a man later identified as Blair, struggling on the ground. When Officer Labensky got to the spot where the men were skirmishing, Denney let Blair up and released him into Officer Labensky's custody. Blair was still uncooperative and aggressive, even with officers, so he was placed in handcuffs and led to a police cruiser to cool off; Officer Labensky came back inside and investigated what had just transpired.

{¶ 3} Officer Labensky spoke with Denney, who explained that he had had multiple run-ins with Blair that night. The first was a simple dress code violation – Blair had a hood up inside the establishment – and when Denney tried to address it, Blair was "very militant, very hostile." Trial Tr. at 80. The situation that led to the altercation between Blair and Denney started with Denney's trying to resolve an argument that Blair's brother was having with some girls. While Denney was trying to sort things out, Blair inserted himself

into the situation with an empty glass in his hand that he was "holding kind of like a baseball." Blair's aggressive posture concerned Denney, so he grabbed the glass away from him. This caused Blair to "square up" with Denney, and the fight ensued.

{¶ 4} Denney indicated that he did not want criminal charges filed. Officer Labensky returned to the cruiser to release Blair from custody. As soon as he opened the cruiser's door, however, "[Blair] was * * * very aggressive and hostile." Trial Tr. at 108. Officer Labensky repeatedly tried to calm Blair down and remove the handcuffs, but Blair's aggressiveness was escalating. Blair's brother and other friends also tried to calm him down, but he would not listen to them either; instead, he accused the police of abducting and kidnapping him. Other officers arrived on scene and likewise failed to calm Blair down. Finally, Sergeant Jeremy Branham determined that "enough was enough," and Blair was arrested for persistent disorderly conduct and transported to the West Carrollton police station for processing.

{¶ 5} At the police station, Blair continued to demonstrate aggression and non-compliance. Officers again tried to release Blair from the handcuffs, but he became unresponsive and threw himself onto the floor, lying in the fetal position; he refused to answer basic identification questions and continued to accuse the officers of various crimes. Due to his non-compliance, Blair was dragged out of the processing room and transported to the Montgomery County Jail.

{¶ 6} On October 18, 2021, Blair was charged by way of criminal complaint with obstructing official business, a second-degree misdemeanor; persistent disorderly conduct, a fourth-degree misdemeanor; and failure to disclose personal information, a

fourth-degree misdemeanor. The case proceeded to a jury trial on December 15, 2021. During trial, the State presented testimony from Denney and three West Carrollton police officers involved in the case. Officer Labensky's body-camera video as well as video from the processing room at the West Carrollton police station were also admitted as exhibits.

{¶ 7} Ultimately, the jury found Blair guilty as charged, and he was sentenced to 90 days in jail with 60 days suspended; he was also given credit for one day served. On February 1, 2022, Blair filed this appeal, which raises two assignments of error. We will address the assignments in a manner that facilitates our analysis.

## II.     Sufficiency and Manifest Weight of the Evidence

{¶ 8} In this appeal, Blair raises two related assignments of error – that his convictions were against the manifest weight of the evidence and based upon insufficient evidence. We will consider them together.

{¶ 9} "[S]ufficiency is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." *State v. Thompkins*, 78 Ohio St.3d 380, 386, N.E.2d 541 (1997). It is essentially a test of adequacy: whether the evidence is legally sufficient to support a verdict is a question of law. *Id.*

{¶ 10} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Marshall*, 191 Ohio App.3d 444, 2010-Ohio-5160, 946 N.E.2d 762, ¶ 52 (2d Dist.), quoting *State v. Jenks*, 61 Ohio St.3d

259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. The relevant inquiry is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the crime's essential elements proven beyond a reasonable doubt. *Id.*

{¶ 11} On the other hand, when an appellate court reviews whether a conviction is against the manifest weight of the evidence, "[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). A case should not be reversed as being against the manifest weight of the evidence except "'in the exceptional case in which the evidence weighs *heavily* against the conviction.'" (Emphasis added.) *Id.*

{¶ 12} "Although sufficiency and manifest weight are different legal concepts, manifest weight may subsume sufficiency in conducting the analysis; that is, a finding that a conviction is supported by the manifest weight of the evidence necessarily includes a finding of sufficiency." (Citations omitted.) *State v. McCrary*, 10th Dist. Franklin No. 10AP-881, 2011-Ohio-3161, ¶ 11. *Accord State v. Winbush*, 2017-Ohio-696, 85 N.E.3d 501, ¶ 58 (2d Dist.). As a result, a determination that a conviction is supported by the weight of the evidence will also be dispositive of sufficiency. *State v. Farra*, 2d Dist. Montgomery No. 28950, 2022-Ohio-1421, ¶ 50.

Persistent Disorderly Conduct

{¶ 13} According to R.C. 2917.11(A)(1), a person shall not recklessly cause inconvenience, annoyance, or alarm to another by engaging in fighting, threatening to harm persons or property, or in violent/turbulent behavior. "Turbulent behavior" is "tumultuous behavior" or "unruly conduct" characterized by a violent disturbance or commotion. *State v. Street*, 2d Dist. Montgomery No. 26501, 2015-Ohio-2789, ¶ 25.

{¶ 14} Typically, disorderly conduct is a minor misdemeanor, however, if the offender persists in the conduct after a reasonable warning or request, the offense becomes a misdemeanor of the fourth degree. R.C. 2917.11(E)(3)(a).

{¶ 15} In this case, Blair was guilty of disorderly conduct. Officer Labensky testified that after learning that Denney did not want to pursue charges against Blair, he went back to his cruiser to release him. However, Labensky was unable to explain the situation to Blair because "as soon as [he] opened the door, [Blair] was verbal, very aggressive and hostile toward [him]." Trial Tr. at 108. Officers tried over and over to remove the handcuffs from Blair's wrists, but he was so aggressive that they could not. Sergeant Branham recounted that officers made at least ten attempts to get Blair to calm down so they could remove the handcuffs, but when he still would not comply, the decision was made to arrest Blair. The body camera footage affirms this testimony. The video showed Officer Labensky try to calm Blair down and explain that he was not in trouble and that he was not going to jail, but Blair continued to be aggressive and non-compliant. At one point, another officer attempted to remove Blair's handcuffs, and he physically jerked away. On multiple occasions Blair even accused the officers of kidnapping and abducting him.

{¶ 16} Blair's repeated refusals to cooperate were an inconvenience to the officers and constituted "tumultuous behavior" and "unruly conduct" characterized by a violent disturbance. Blair's conviction for persistent disorderly conduct was supported by sufficient evidence and was not against the manifest weight of the evidence.

Obstructing Official Business

{¶ 17} According to R.C. 2921.31(A), "[n]o person without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties." The offense of obstructing official business, therefore, includes five essential elements: "(1) an act by the defendant, (2) done with the purpose to prevent, obstruct, or delay a public official, (3) that actually hampers or impedes a public official, (4) while the official is acting in the performance of a lawful duty, and (5) the defendant so acts without privilege." (Citations omitted.) *State v. Body*, 2018-Ohio-3395, 117 N.E.3d 1024, ¶ 20 (2d Dist.), citing *State v. Kates*, 2006-Ohio-6779, 865 N.E.2d 66, ¶ 21 (10th Dist.).

{¶ 18} Further, to violate the statute, a defendant must engage in an affirmative or overt act that impedes a public official in the performance of his or her duties. *State v. Prestel*, 2d Dist. Montgomery No. 20822, 2005-Ohio-5236, ¶ 16. A single refusal to respond to an officer's request does not constitute obstructing official business, but continued uncooperative behavior can amount to a violation. *See State v. Crawford*, 2d Dist. Montgomery No. 25506, 2013-Ohio-4398, ¶ 17; *Street*, 2d Dist. Montgomery, No. 26501, 2015-Ohio-2789, at ¶ 23.

{¶ 19} Here, Blair repeatedly refused to cooperate with officers. Blair walked under his own power into the police station, but as soon as he got to the processing room and his handcuffs were removed, he collapsed on the floor in the fetal position and refused to respond to basic booking questions or sit in the chair as requested. Blair's behavior made any attempt at processing him impossible and forced the officers to physically carry him to their police cruiser and then transport him to the Montgomery County Jail, where there would be more assistance.

{¶ 20} Blair's conviction for obstructing official business was supported by sufficient evidence and was not against the manifest weight of the evidence.

<ins>Failure to Disclose Personal Information</ins>

{¶ 21} Pursuant to R.C. 2921.29(A)(1), "[n]o person who is in a public place shall refuse to disclose the person's name, address, or date of birth, when requested by a law enforcement officer who reasonably suspects [that] the person is committing, has committed, or is about to commit a criminal offense." This subsection of R.C. 2921.29 applies to questioning in the context of an investigative detention and not to questions asked during a consensual encounter. *State v. Crump*, 1st Dist. Hamilton No. C-190636, 2021-Ohio-2574, ¶ 17.

{¶ 22} The resolution of this argument revolves around the definition of a "public place." "Public place" is not defined in R.C. 2921.29, the failure to disclose personal information law, nor is it explained in R.C. 2901.01, the section of the Revised Code that gives definitions for words used in our criminal statutes. In fact, our research has only found "public place" defined once in the entirety of the Ohio Revised Code: in R.C.

3794.01, the definitional section of Ohio's public smoking ban. It defines "public place" as "an enclosed area to which the public is invited or in which the public is permitted and that is not a private residence." R.C. 3794.01(B). Black's Law Dictionary gives us a similar definition. It states that a "public place" is "any location that the local, state, or national government maintains for the use of the public, such as a highway, park, or public building." *Black's Law Dictionary* (11th ed. 2019). By synthesizing those definitions, we can conclude that in *this* case, a "public place" is a building where the public – ordinary citizens – are regularly permitted to be.

{¶ 23} Here, there is little evidence, either from the trial transcript or body camera videos, that officers asked Blair to identify himself at the Yellow Rose. At the 24:03 minute mark of the body camera video, Officer Labensky tells another officer "[h]e won't give me his name. I don't have his name," (*see also* Trial Tr. at 125) and, while that could imply that Officer Labensky had asked for Blair's identification, the body camera video, which was recording the entire time Officer Labensky and Blair interacted, did not show that Blair was ever asked to identify himself. In fact, during his trial testimony, Officer Labensky admitted that he did not ask Blair to identify himself prior to being driven to the police station. Trial Tr. at 145. The State. in its brief, argues that the "record is clear that officers asked for Appellant's information on scene at the Yellow Rose[,]" but that contention is belied by the record.

{¶ 24} Officers, though, did ask Blair to identify himself once in the processing room at the police station. The question before us, therefore, is whether the processing room inside the police station is a "public place."

{¶ 25} Using the definition that we suggested earlier that a "public place" is somewhere ordinary citizens are regularly permitted to be, it is evident that part – but not all – of a police station is a public place. For instance, the lobby or front desk area of a police station would likely be considered a public place; citizens can come and go freely, and it is a space maintained for the public. The secure locations inside the police station – places that ordinary citizens cannot go or can go only when accompanied by authorized personnel (i.e., police officers) – are not "public places."

{¶ 26} In this case, Blair was escorted by Officer Paige Callahan and Officer Labensky inside a locked back door of the West Carrollton police headquarters and into a secure room. Once the door they entered through was closed and the officers had deposited their firearms into a lock box, the trio went through another locked door, down a secure hallway, and into the processing room. It was in the processing room that, according to the body camera video, Officer Callahan first asked Blair to identify himself and he refused.

{¶ 27} Because Blair was asked and refused to identify himself in a place that was not public, we conclude that his conviction for failure to disclose personal information was not supported by sufficient evidence and was against the weight of the evidence.

### III. Conclusion

{¶ 28} Because we find that Blair's convictions for persistent disorderly conduct and obstructing official business were supported by sufficient evidence and were not against the manifest weight of the evidence, his assignments of error are overruled as to those counts. Blair's conviction for failure to disclose personal information was not

supported by sufficient evidence and was against the manifest weight of the evidence, and therefore, the assignments of error are sustained as to that count.

{¶ 29} Blair's conviction for failure to disclose personal information will be vacated. The trial court's judgment as to persistent disorderly conduct and obstructing official business will be affirmed.

. . . . . . . . . . . . .

WELBAUM, J., and LEWIS, J., concur.

Copies sent to:

Karen B. Groseth
Richard L. Kaplan
William H. Wolff, Jr., Visiting Judge