[Cite as *State v. Hammock*, 2024-Ohio-2149.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NOS. C-230548 |
| | | C-230549 |
| Plaintiff-Appellee, | : | TRIAL NOS. C-23CRB-14249 |
| | | C-23CRB-12987 |
| vs. | : | |
| ELENA HAMMOCK, | : | *O P I N I O N.* |
| Defendant-Appellant. | : | |

Criminal Appeals From:  Hamilton County Municipal Court

Judgments Appealed From Are:  Reversed and Appellant Discharged in C-230548;
Affirmed in C-230549

Date of Judgment Entry on Appeal:  June 5, 2024

*Melissa A. Powers*, Hamilton County Prosecuting Attorney, *Alex Scott Havlin*, Assistant Prosecuting Attorney, and *Norbert Wessels*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Jeffrey J. Cutcher*, for Defendant-Appellant.

**ZAYAS, Presiding Judge.**

**{¶1}** In these consolidated appeals, defendant-appellant Elena Hammock appeals her convictions for criminal trespass in violation of R.C. 2911.21(A)(3) and obstructing official business in violation of R.C. 2921.31(A). For the reasons that follow, we reverse the judgment convicting Hammock of criminal trespass but affirm the judgment convicting Hammock of obstructing official business.

### I. Factual and Procedural History

**{¶2}** On July 28, 2023, a police officer with the city of Norwood went to the property located at 1191 Crown Avenue ("the residence") to execute an administrative search warrant related to a notice to vacate that was served on the residence by the city of Norwood. The body-worn camera footage shows that the officer arrived at the residence, walked to the side door, called out for Hammock, and knocked on the storm door. He continued to sporadically knock on the storm door and yell out for Hammock, identifying himself as "Norwood police," for around three minutes before Hammock yelled something back at the officer from inside her home. Around four and a half minutes after the officer's initial knock, an exchange occurred between the officer and Hammock through the closed door. During the exchange, the officer told Hammock to come outside, but she refused, saying she felt unsafe. The officer then told Hammock he had "paperwork" to give her and told her he was going to move away from the door.

**{¶3}** Around five and a half minutes after the officer's initial knock, he told Hammock that he had a search warrant to search the property. In response, Hammock asked, "What are you searching for?" She then opened the side door to the house—leaving the storm door closed—and again asked, "What are you searching for?" The officer responded, "We have to search the property to make sure it's okay for you

to live here." Hammock replied that she did not want him there and told him he had no business to be there and to get off her property.

{¶4} Hammock repeatedly told the officer to get off of her property while he attempted to give her the search warrant. She eventually told him that she was not opening the door and shut the side door. In response, the officer went to the door, reached through the plastic placed in the storm door to unlock and open it, knocked on the home's side door, and yelled out to Hammock. He had yet to check to see if the side door was locked at this point. The officer continued to sporadically knock on the side door and yell out for Hammock.

{¶5} Finally, around ten minutes after the officer initially knocked on the door, the officer checked to see if the side door was locked. It was, so he requested that the fire department come with breaching equipment. While waiting for the fire department, another exchange occurred between the officer and Hammock through the closed door. During the exchange, Hammock pulled back the curtain on the door's window, looked out the window, and told the officer that she had "the 4th Amendment" and wanted him off her property. In response, the officer told her to open the door, so he did not have to destroy the door. Hammock replied that she would not open the door and again repeatedly told the officer she wanted him off of the property. She then closed the curtain but appeared to remain standing by the door. The officer tried to open the door, finding it to still be locked, and Hammock pulled back the curtain and once again told the officer that she had "the 4th Amendment" and wanted him off of her property.

{¶6} Around 18 minutes after the officer's initial knock, while Hammock was still standing in the window of the door, the fire department arrived and started to assist the officer with opening the side door. Once they got the door pried open with

3

a Halligan, Hammock pushed the door back closed, and the door was relocked. The officer and the fire department again used the Halligan to pry open the side door. While the officer was pushing the door open the second time, Hammock stood behind the door and swatted her arm through the opening at the officer while the officer attempted to enter. The officer backed away, and Hammock started to push the door closed again. The officer then told others on the scene to push with him, and—together—they pushed the door open. Hammock was then removed from the home and subsequently charged with obstructing official business in violation of R.C. 2921.31.

{¶7} Later, on August 16, 2023, the officer went back to the residence in response to a call Hammock made about a neighbor. The body-worn camera footage shows that Hammock was inside the home when the officer arrived and was arrested when she came out of the residence. The officer testified that she was arrested on a warrant "for obstructing." Hammock was subsequently charged with criminal trespass in violation of R.C. 2911.21 for removing the plywood that was meant to stop anyone from entering the residence. The officer testified that the criminal-trespass charge was added because it was deemed that no one should be inside the residence.

{¶8} Hammock was convicted after the bench trial on both charges, and now appeals these convictions.

## II. Law and Analysis

### A. Criminal Trespass

{¶9} In her first assignment of error, Hammock contends that her conviction for criminal trespass in violation of R.C. 2911.21(A)(3) was not supported by sufficient evidence.

{¶10} R.C. 2911.21(A)(3) states, "No person, without privilege to do so, shall * * * [r]ecklessly enter or remain on the land or premises *of another*, as to which notice against unauthorized access or presence is given by actual communication to the offender, or in a manner prescribed by law, or by posting in a manner reasonably calculated to come to the attention of potential intruders, or by fencing or other enclosure manifestly designed to restrict access." (Emphasis added.)

{¶11} Hammock argues that the evidence was insufficient to support her conviction for a violation of this section as the evidence shows that she was the owner of the premises where she was allegedly trespassing, and therefore, there was no evidence that she was on the land *of another*. The state concedes this error and agrees that the evidence does not support a conviction under this section where it was undisputed that Hammock was the owner of the home and there was no indication that anyone else had control or custody of the home. *See* R.C. 2911.21(A)(3) (requiring—among other things—that a person enter or remain on the land or premises *of another*). Accordingly, we sustain the first assignment of error and reverse the conviction for criminal trespass.

{¶12} In her second assignment of error, Hammock contests her conviction for criminal trespass and argues that the trial court abused its discretion by "legislating from the bench" and indicating that a person can be convicted of criminal trespass under R.C. 2911.21 for entering one's own property once the property has been declared uninhabitable. However, our resolution of the first assignment of error renders this assignment of error moot, so we need not address it.

**B. Obstructing Official Business**

**{¶13}**   In her third and fourth assignments of error, Hammock argues that her conviction for obstructing official business in violation of R.C. 2921.31(A) was not supported by sufficient evidence and was against the manifest weight of the evidence.

**{¶14}**   "In reviewing a challenge to the sufficiency of the evidence, a reviewing court must determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime had been proven beyond a reasonable doubt." *State v. Brantley*, 1st Dist. Hamilton No. C-210258, 2022-Ohio-597, ¶ 14, citing *State v. Jenks*, 61 Ohio St.3d 259, 274, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

**{¶15}**   "When considering a challenge to the weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created a manifest miscarriage of justice." *Brantley* at ¶ 15, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).  "Reversing a conviction as being against the manifest weight of the evidence should be reserved for only the most ' "exceptional case in which the evidence weighs heavily against the conviction." ' " *Id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 485 N.E.2d 717 (1st Dist.1983), paragraph three of the syllabus.

**{¶16}**   To support a conviction for obstructing official business in violation of R.C. 2921.31(A), the state must prove that a defendant " '(1) performed an act; (2) without privilege; (3) with purpose to prevent, obstruct, or delay the performance of a public official of any authorized act within the public official's official capacity; and (4) that hampered or impeded the performance of the public official's duties.' " *Brantley*,

1st Dist. Hamilton No. C-210258, 2022-Ohio-597, at ¶ 16, quoting *State v. Buttram*, 1st Dist. Hamilton No. C-190034, 2020-Ohio-2709, ¶ 10.

{¶17} In other words, "an individual must commit an overt act done with an intent to obstruct a public official, such as a police officer, and the act must succeed in actually hampering or impeding that officer." *State v. Easterling*, 2019-Ohio-2470, 139 N.E.3d 497, ¶ 35 (2d Dist.), citing *State v. Davis*, 2017-Ohio-5613, 94 N.E.3d 194, ¶ 37 (2d Dist.). " 'The proper focus in a prosecution for obstructing official business is on the defendant's conduct, verbal or physical, and its effect on the public official's ability to perform the official's lawful duties.' " *Id.*, quoting *State v. Henry*, 2018-Ohio-1128, 110 N.E.3d 103, ¶ 55 (10th Dist.). "The totality of the defendant's conduct should be considered, as opposed to viewing each act in isolation." *Id.*, citing *State v. Body*, 2018-Ohio-3395, 117 N.E.3d 1024, ¶ 22 (2d Dist.).

{¶18} " 'A mere failure or refusal to respond to an officer's request does not constitute obstructing official business.' " *Id.* at ¶ 36, quoting *State v. Crawford*, 2d Dist. Montgomery No. 25506, 2013-Ohio-4398, ¶ 17. For example, refusing to answer the door when police knock and identify themselves does not amount to obstructing official business. *Id.*, citing *State v. Prestel*, 2d Dist. Montgomery No. 20922, 2005-Ohio-5236, ¶ 16.

{¶19} Additionally, " '[t]here must be some substantial stoppage of the officer's progress before one can say [the officer] was hampered or impeded.' " *Buttram*, 1st Dist. Hamilton No. C-190034, 2020-Ohio-2709, at ¶ 20, quoting *State v. Stephens*, 57 Ohio App.2d 229, 230, 387 N.E.2d 252 (1st Dist.1978). " [T]his court has held that no finite period of time constitutes a substantial stoppage, 'be the delay * * * thirty seconds or two minutes.' " *Id.*, quoting *State v. Wellman*, 173 Ohio App.3d 494, 2007-Ohio-2953, 879 N.E.2d 215, ¶ 18 (1st Dist.). Rather, the question is whether "the

defendant's act had 'more effect on the performance of the police than silence or a refusal to answer would have had.' " *Id*., quoting *State v. Gordon*, 9 Ohio App.3d 184, 187, 458 N.E.2d 1277 (1st Dist.1983).

**{¶20}** Hammock claims that her conviction should be reversed for several reasons. First, she argues that she did not engage in any affirmative act.

**{¶21}** The body-worn camera footage clearly shows that Hammock pushed the door closed, and it became relocked after it was pried open with the Halligan the first time. Additionally, the video shows that once the door was pried opened with the Halligan for the second time, Hammock swatted her arm at the officer and then tried to push the door back closed, causing the officer to ask for assistance with pushing the door open. The officer testified that the door was being pushed back at him and that's why he asked for assistance with pushing the door open. Pushing the door closed the first time, attempting to push the door closed the second time, and swatting her arm at the officer are affirmative acts that go beyond mere failure or refusal to comply with the officer's orders.

**{¶22}** Hammock next argues that she did not hamper or impede the officer as any delay attributed to her conduct was de minimus.

**{¶23}** Hammock pushed the door closed and the door was relocked after it was pried open with the Halligan the first time and then swatted her arm at the officer and pushed against the efforts to open the door the second time, to the point that the officer requested assistance with pushing the door open. These acts had more effect on the performance of the officer in executing the search warrant than mere silence or a refusal to answer would have had. *Compare Easterling*, 2019-Ohio-2470, 139 N.E.3d 497 (holding that the evidence was sufficient to support a conviction for obstructing official business where the evidence showed that the defendant came onto the porch

when officers arrived and were talking to his brother outside, the officer started to approach the defendant while telling the defendant that he needed to speak with him and not to go back into the house, the defendant started back toward the front door, the officer continued to tell the defendant to stop and not to go back into the house, the officer went to the front door and grabbed the front door, the defendant slammed the door shut and was forcibly holding the door, and the officer and the defendant got into a "pushing match" until another officer assisted the officer with pushing the door open) *with State v. Crawford*, 2d Dist. Montgomery No. 25506, 2013-Ohio-4398 (holding that the evidence was insufficient to support a conviction for obstructing official business where the evidence showed that the defendant yelled police and closed—but did not lock—the previously open front door as the police were approaching the residence equipped with a battering ram and before the police announced that they possessed a search warrant or ordered the defendant to leave the door open), and *In re R.B.*, 2021-Ohio-3749, 179 N.E.3d 749 (1st Dist.) (holding that the evidence was insufficient to support an adjudication for obstructing official business where the evidence showed that a juvenile closed—but did not lock—the back door of a vacant residence and retreated from the door as an officer approached the residence to secure the vacant property). Therefore, Hammock's conduct was more than de minimis.

{¶24} Finally, Hammock argues that, even if she engaged in an affirmative act that hampered or impeded the officer's performance, she was privileged to do so where the evidence was insufficient to show that she understood that the officer was there to execute the search warrant.

{¶25} The body-worn camera footage shows that, after the officer told Hammock that he had a search warrant, she responded by asking him what he was

9

searching for. Further, she repeatedly told the officer to leave because she had the "Fourth Amendment." This evidence supports that she understood that the officer was there to execute a search warrant.

{¶26} Accordingly, for all the reasons stated, we cannot say the conviction for obstructing official business in violation of R.C. 2921.31(A) was not supported by sufficient evidence or against the manifest weight of the evidence. Therefore, the third and fourth assignments of error are overruled.

### III. Conclusion

{¶27} For all the foregoing reasons, we sustain the first assignment of error, reverse the judgment of the trial court, and discharge appellant from further prosecution in the appeal numbered C-230548. Our resolution of the first assignment of error renders the second assignment of error moot and we need not address it. We overrule the third and fourth assignments of error and affirm the judgment of the trial court in the appeal numbered C-230549.

Judgment accordingly.

CROUSE and KINSLEY, JJ., concur.

Please note:

The court has recorded its own entry this date.