[Cite as *State v. Cooper*, 2024-Ohio-3081.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NOS. C-240018 |
| | | C-240019 |
| Plaintiff-Appellee, | : | TRIAL NOS. 23CRB-19485 |
| | | 23CRB-19486A |
| vs. | : | |
| | | *O P I N I O N.* |
| BENJAMIN COOPER, | : | |
| | | |
| Defendant-Appellant. | : | |

Criminal Appeals From: Hamilton County Municipal Court

Judgments Appealed From Are: Affirmed

Date of Judgment Entry on Appeal: August 14, 2024

*Emily Smart Woerner*, City Solicitor, *William T. Horsley*, Chief Prosecuting Attorney, and *Tori Gooder*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T*. Faller, Hamilton County Public Defender, and *Sarah E. Nelson*, Assistant Public Defender, for Defendant-Appellant.

**KINSLEY, Judge.**

{¶1} Defendant-appellant Benjamin Cooper appeals his misdemeanor convictions for resisting arrest and obstructing official business. In a single assignment of error, Cooper challenges the sufficiency and manifest weight of the evidence supporting his convictions. More specifically, Cooper argues that the officer who arrested him lacked probable cause to believe he had trespassed at a Stop-N-Go store because the officer, rather than the store clerk, notified Cooper that he had to leave the property. Because the officer was acting as the clerk's agent in communicating that Cooper was no longer welcome on the premises, we overrule the assigned error and affirm the judgments of the trial court.

### *Factual and Procedural Background*

{¶2} On November 9, 2023, Officer Gregory Harmon of the Cincinnati Police Department pulled into the parking lot of the Stop-N-Go on West McMillan Street in Cincinnati. Harmon stopped at the convenience store to use the restroom and purchase a drink. He was seated in his cruiser finishing a report when Cooper approached. Harmon was not familiar with Cooper.

{¶3} Harmon testified at trial about his encounter with Cooper, and footage from his body-worn camera was admitted as well. According to Harmon, Cooper shouted something Harmon could not discern because the cruiser's windows were up. When Harmon rolled down the window, Cooper indicated that he was a federal agent and that Harmon was outside his jurisdiction. Harmon twice inquired whether Cooper needed police services, which Cooper did not answer. Harmon rolled his window back up.

2

{¶4} Harmon then entered the Stop-N-Go. He asked the store clerk if she wanted Cooper to leave the property. The clerk answered in the affirmative. Harmon then went back outside and advised Cooper to go. Cooper replied, "she has to tell me," and tried to enter the store. Harmon held the door shut and stuck his hand out to prevent Cooper from entering. Cooper ended up on the ground, but how he got there was the subject of dispute. Cooper maintained Harmon pushed him, Harmon opined Cooper threw himself to the ground, and a bystander testified Cooper fell backward over a parking stop.

{¶5} According to Harmon's testimony, Harmon then retrieved his handcuffs and orally advised Cooper he was under arrest. He repeatedly ordered Cooper to put his hands behind his back. Cooper struggled against the officer. While Harmon was able to secure Cooper's right hand in a handcuff, he had difficulty securing Cooper's left hand. Believing an escalation of force was necessary, Harmon retrieved his taser. Cooper knocked the taser out of Harmon's hand. As the two men continued to scuffle, Cooper grabbed the taser and threw it out of reach.

{¶6} Harmon was eventually able to secure both of Cooper's hands in handcuffs. Other officers who had arrived on scene then took over the arrest.

{¶7} Bystander M.H. testified for the state. M.H. was across the street taking pictures at a job site. He observed Cooper approach the driver's side of the police cruiser. M.H. described Cooper's behavior as "arms going everywhere, jumping up and down." He saw Cooper go to the front of the cruiser and grab ahold of the bumper, shaking the vehicle. M.H. testified Cooper walked towards the entrance to the store, after which he moved backwards and fell over the parking stop.

{¶8} M.H. recorded a portion of the incident on his cell phone, and that video was entered into evidence. He observed Cooper tussle with Harmon and knock the taser out of the officer's hand. According to M.H., Cooper reached down, grabbed the taser, and threw it. The taser landed in M.H.'s lap.

{¶9} Cooper was eventually taken into custody and charged with obstructing official business in violation of R.C. 2921.31(A) and resisting arrest in violation of R.C. 2921.33(A), both misdemeanors of the second degree. The state also levied charges for criminal trespass and failure to disclose personal information, but those charges were dismissed prior to trial.

{¶10} Following a bench trial, the court found Cooper guilty of the resisting arrest and obstructing charges. The court imposed identical, concurrent sentences on the charges consisting of 90 days in jail with 58 days suspended and credit for 32 days served. In addition, the court imposed one year of community control. Cooper timely appealed.

{¶11} In his sole assignment of error, Cooper challenges the weight and sufficiency of the evidence supporting his convictions.

### Standards of Review

{¶12} To assess whether a conviction is supported by sufficient evidence, we ask "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. *See State v. Curry*, 2020-Ohio-1230, ¶ 11 (1st Dist.).

{¶13} Unlike a sufficiency review, a manifest-weight challenge requires us to independently "review the entire record, weigh the evidence, consider the credibility

of the witnesses, and determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice." *State v. Powell*, 2020-Ohio-4283, ¶ 16 (1st Dist.), citing *State v. Thompkins*, 78 Ohio St.3d 380, 397 (1997). Reversal and retrial are warranted only in " 'exceptional cases in which the evidence weighs heavily against the conviction.' " *State v. Sipple*, 2021-Ohio-1319, ¶ 7 (1st Dist.), quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983).

### *Resisting Arrest*

**{¶14}** R.C. 2921.33(A) provides that "[n]o person, recklessly or by force, shall resist or interfere with a lawful arrest of the person or another." According to Harmon, Cooper was under arrest for criminal trespass for trying to enter the store after being told to leave. The statute proscribing criminal trespass, R.C. 2911.21, provides in pertinent part that "[n]o person, without privilege to do so, shall . . . [k]nowingly enter or remain on the land or premises of another." R.C. 2911.21(A)(1). The trespass statute further provides that "[n]o person, without privilege to do so, shall . . . [be] on the land or premises of another, negligently fail or refuse to leave upon . . . being notified to do so by the owner or occupant, or the agent or servant of either[.]" R.C. 2911.21(A)(4).

**{¶15}** Cooper argues there is insufficient evidence to support the "lawful arrest" element of the resisting statute because the record does not indicate he engaged in criminal trespass. He emphasizes the fact that Harmon initiated his removal from the Stop-N-Go rather than the store clerk and maintains that the officer was without authority to revoke his privilege to remain on the premises. Cooper further argues Harmon did not have cause to arrest him for failure to disclose personal information,

5

as the statute criminalizing that offense requires disclosure only where an individual is "reasonably suspected" of committing a crime. *See* R.C. 2921.29(A)(1).

{¶16} Alternatively, Cooper asserts his resisting arrest conviction is against the manifest weight of the evidence. He reiterates the arguments that Harmon initiated his ejection from the premises without prompting or notice by the store clerk, without the authority to do so, and without evidence of criminal behavior on his part.

{¶17} A lawful arrest is that which is supported by probable cause or a reasonable belief that the offense in question occurred. *State v. Glenn*, 2004-Ohio-1489, ¶ 23 (1st Dist.). Because the offense underscoring the arrest in this case was criminal trespass, the state was tasked with proving Harmon had probable cause or a reasonable basis to arrest Cooper for that offense. *See id.*

{¶18} With regard to Cooper's presence at the Stop-N-Go, he undoubtedly remained on the premises and attempted to enter the store after being told by Harmon to leave. This act afforded Harmon probable cause to arrest Cooper for criminal trespass. *See State v. Staley*, 2021-Ohio-3086, ¶ 21 (1st Dist.) (collecting cases from several courts holding that a guest must immediately vacate the premises once their privilege to remain is withdrawn).

{¶19} Cooper's argument that the clerk herself was required to revoke his privilege to remain on the store premises is unavailing. The criminal trespass statute itself expressly imposes liability where an individual has been told to leave by an "agent or servant" of the owner or occupant of the premises. *See* R.C. 2911.21(A)(4). Thus, it was sufficient for Harmon, acting as the store clerk's agent, to notify Cooper that he was no longer permitted on the property.

{¶20} To the extent that Cooper challenges whether Harmon was in fact acting as the store clerk's agent, the record sufficiently establishes that the clerk told Harmon she wished for Cooper to leave. Harmon therefore acted as the clerk's agent when he conveyed her directive to Cooper. *See, e.g., Cleveland v. Dickerson*, 2016-Ohio-806, ¶ 29 (8th Dist.) (police officers who advised two individuals to vacate airport after they finished using restroom facilities were acting as agents of property owner).

{¶21} In challenging the sufficiency of the evidence, Cooper also emphasizes the fact that he was not interrupting any business at the store prior to Harmon's arrival and that no customers were bothered by his actions. These arguments, while perhaps mitigating, do not bear on any of the elements of criminal trespass. *See* R.C. 2911.21. A property owner does not need a legal or even a factual justification for excluding a person from the property under R.C. 2911.21.

{¶22} The state therefore presented sufficient evidence of probable cause to arrest Cooper for the offense of criminal trespass.

{¶23} Cooper's unequivocal resistance to the lawful arrest followed. Harmon advised Cooper he was under arrest and repeatedly instructed him to place his hands behind his back. In response, Cooper physically struggled against the officer. Although Harmon was able to secure Cooper's right hand in a handcuff, Cooper refused to place his left arm behind his back and laid down to prevent Harmon from doing so. He flailed about and tensed his body. Harmon eventually was able to secure both handcuffs around Cooper's wrists, but not without much difficulty.

{¶24} Cooper's argument that this was a retaliatory arrest is not supported by the record, nor did the trial court did go astray in allocating weight to the state's evidence on this point. Harmon acknowledged referencing Cooper as "the guy who is

out here trying to taunt me" when asking the store clerk if she wanted Cooper to leave. At trial, however, Harmon testified he was not bothered by Cooper "flipping him off." He maintained people "flipped him off" daily and the gesture no longer bothered him. The trial court was in the best position to assess Harmon's credibility in this respect. *See State v. Brown*, 2023-Ohio-2885, ¶ 15 (1st Dist.).

**{¶25}** Regardless, the objective facts surrounding the arrest clearly demonstrate probable cause for Cooper's arrest for criminal trespass. Despite the store clerk's expressed wish for Cooper to leave, which was conveyed to him via Harmon, Cooper persisted in attempting entry. At that moment, Harmon had probable cause to arrest him for criminal trespass. Cooper then resisted that lawful arrest by pulling away and preventing Harmon from securing his arms in handcuffs. Thus, there was sufficient evidence to support his conviction for resisting arrest.

### *Obstructing Official Business*

**{¶26}** R.C. 2921.31(A) provides that "[n]o person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties." This court has distilled the essential elements of the offense of obstructing official business to include proof that the accused "(1) performed an act; (2) without privilege; (3) with purpose to prevent, obstruct, or delay the performance of a public official of any authorized act within the public official's official capacity; and (4) that hampered or impeded the performance of the public official's duties." *In re S.J.*, 2023-Ohio-3441, ¶ 21 (1st Dist.), quoting *State v. Brantley*, 2022-Ohio-597, ¶ 16 (1st Dist.).

8

{¶27} Cooper challenges three of these essential elements. First, he maintains the record is devoid of evidence that Harmon was acting in his official capacity when he ejected Cooper from the Stop-N-Go premises. Rather, Harmon stopped at the store to use the restroom and purchase a drink. Second, Cooper alleges he was privileged to resist the unlawful arrest. Third, Cooper summarily avers that the acts of withholding his arms and kicking the taser did not impede or obstruct any investigation or official business.

{¶28} First, the record supports that Harmon was acting in his official capacity when he ejected Cooper from the premises. Harmon testified he was trying to effectuate an arrest to enforce the criminal trespass law per his official duties. It is true that the officer initially visited the establishment for personal purposes unrelated to Cooper. Police officers, however, are charged with observing and enforcing the laws of the state while in their jurisdiction of authority. *See* R.C. 737.11 ("[t]he police force of a municipal corporation shall preserve the peace, protect person and property, and obey and enforce all ordinances of the legislative authority of the municipal corporation, all criminal laws of the state and the United States"). In line with this continuing obligation, "[p]olice officers have arrest powers regardless of whether they are working regular duty, special duty, or are off duty." *Cannavino v. Rock Ohio Caesars Cleveland, L.L.C.*, 2017-Ohio-380, ¶ 24 (8th Dist.), citing *Ingles v. W. Pancake House*, 1977 Ohio App. LEXIS 7507, *7 (10th Dist. Dec. 27, 1977). *Accord Warrensville Hts. v. Jennings*, 58 Ohio St.3d 206, 211 (1991) ("[a] police officer's continuing duty to obey and enforce the criminal law, even when off duty, has been recognized in other case law and in certain statutes that impose duties on police officers without any 'off-duty' exception"); *State v. Hudson*, 2019-Ohio-3497, ¶ 19 (1st

9

Dist.) (collecting cases acknowledging the continuing obligation on the part of law enforcement officers to observe and enforce the laws of the state, irrespective of duty status).

**{¶29}** Here, the record indisputably establishes that Harmon was employed by the City of Cincinnati Police Department and was acting within the jurisdictional limits of the City of Cincinnati at the time of these events. *See Cincinnati v. Alexander*, 54 Ohio St.2d 248 (1978), syllabus (construing R.C. 2935.03 to hold that a police officer's authority to arrest an individual without a warrant is confined to acts observed within the geographical boundaries of the municipality employing the officer). Harmon was thus empowered to arrest Cooper for a violation of Ohio law, regardless of the officer's duty status or his purpose for visiting the Stop-N-Go.

**{¶30}** Second, as discussed under the resisting arrest analysis, the record supports the lawfulness of the arrest. Thus, Cooper was not privileged to resist the arrest.

**{¶31}** Third, the record supports that Cooper's act of knocking the taser out of Harmon's hand and throwing it out of reach impeded or obstructed official business. This act prolonged the effectuation of Cooper's arrest and had a greater effect on the performance of Harmon's duties than would silence or a refusal to answer on Cooper's part. *See State v. Hammock*, 2024-Ohio-2149, ¶ 23 (1st Dist.). Accordingly, the record sufficiently supports Cooper's conviction for obstructing official business.

### *Differentiating the Actus Rei*

**{¶32}** One final issue bears mention. Cooper also contends that if the official business engaging Harmon was the arrest for criminal trespass, then the evidence of

a physical struggle was wrongly used to support both the resisting arrest and obstructing official business offenses.

**{¶33}** Admittedly, the parties appeared to conflate the conduct underscoring the resisting and obstructing offenses at trial.[1] But the resisting arrest offense was rightly based on Cooper's flailing about, laying down on the ground, tensing up, and refusing to surrender his arms. By contrast, as Harmon testified at the end of his direct examination, the obstructing offense was rightly based on Cooper knocking the taser from Harmon's hand and throwing it. This prevented Harmon from using the force he believed was required to complete the arrest. Therefore, different actions supported the respective offenses.

**{¶34}** These distinctions are borne out in the complaints. The resisting arrest charge alleged that "Δ, while advised by A/O that he was under arrest, resisted and pulled arms away when A/O try to place Δ in handcuffs." By contrast, the obstructing complaint averred that "Δ while resisting arrest grabbed A/O taser from A/O hands & threw it after possessing it." While charging instruments are not evidence, these documents afford some clarity as to the actus rei intended to underscore the respective charges. *See State v. Draher*, 1981 Ohio App. LEXIS 11942, *4 (4th Dist. Sept. 10, 1981) ("It is a fundamental principal that a complaint or indictment is not evidence of the allegations contained therein."). Of note, the testimony elicited by the state at trial sufficiently supported these allegations.

**{¶35}** We therefore reject Cooper's argument that the same conduct was used to support the two separate offenses.

---

[1] In making this observation, we do not mean to suggest that there would be error had the same conduct supported two separate offenses. We do not reach that issue because the record in this case reveals that the separate criminal charges were based upon different actions by Cooper rather than a singular course of conduct.

### *Conclusion*

**{¶36}** Because the record contains sufficient evidence supporting Cooper's convictions for resisting arrest and obstructing official business and those convictions are not against the manifest weight of the evidence, we overrule his sole assignment of error and affirm the judgments of the trial court.

Judgments affirmed.

**BOCK, P.J.,** and **ZAYAS, J.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.